434 A.2d 112

**Gary ZEPP, Appellant,**

v.

**NATIONWIDE INSURANCE COMPANY.**

Superior Court of Pennsylvania.

Argued Dec. 2, 1980.

Filed Aug. 14, 1981.

Joseph Mellace, Philadelphia, for appellant.

Gerard Bruderle, Philadelphia, for appellee.

Before SPAETH, BROSKY and HOFFMAN, JJ.

SPAETH, Judge:

This is an appeal from an order granting summary judgment. Appellant, Gary Zepp, claims benefits under a no-fault automobile insurance policy issued by appellee to his father, James Zepp. The lower court acknowledged that there was an "unresolved question of fact concerning wheth-

er or not the payments sought by [appellant] are in fact 'overdue' under the Act [1] and whether or not they have been properly rejected by [appellee]." It nevertheless granted summary judgment because it calculated that even if the payments had been improperly refused, appellee still did not owe appellant anything. Since we find the lower court's calculation in error, we reverse.

The lower court found that based on its interpretation of the policy, appellant had been overpaid on his work loss claim by $134.35. The court then assessed interest against appellant at the rate of 18% from the day after the last day included in the work loss period until the time the suit was started, increasing the amount appellant owed appellee to $183. The amount of unpaid medical bills claimed in appellant's complaint was $409.49. By reducing this amount by a $250 deductible, the court found that the most appellee could owe appellant would be $159.49. Since this was less than the amount the court had determined appellant owed appellee, the court entered judgment in favor of appellee and against appellant.

The court's assessment of 18% interest against appellant was improper. Section 106(a)(2) of the No-fault Act, 40 P.S. § 1009.106(a)(2), provides that when no-fault benefits are not paid on time by the insurance company, they bear interest at 18%. The Supreme Court has held that this high rate—three times the normal legal rate of 6%—reflects a legislative determination that prompt payment of no-fault benefits is of particular importance and is to be encouraged. *Hayes v. Erie Insurance Exchange*, 493 Pa. 150, 425 A.2d 419 (1981). Nothing indicates any intention by the legislature to apply this rate to overpayments erroneously made by an insurance company.[2]

1. Act of July 19, 1974, P.L. 489, No. 176, 40 P.S. §§ 1009.101 *et seq.*

2. If we assume that appellee would be entitled to interest at 6% on an overpayment, the lower court still erred by computing interest from the day after the last day included in the work loss period without any reference to the circumstances of the overpayment, the date the payment was made (this date is not of record), and the date

In addition, the court's assumption that the amount of unpaid medical bills claimed in appellant's complaint should be reduced by a $250 deductible is unsupported by the record.

Section 203 of the No-fault Act, 40 P.S. § 1009.203, provides as follows:

(b) The owner or operator of a motor vehicle may elect to provide for security in whole or in part for the payment of basic loss benefits through a program, group, contract or other arrangement that would pay to or on behalf of the victim or members of his family residing with him or the survivor of a deceased victim, allowable expense, loss of income, work loss, replacement services loss and survivors loss. In all such instances, each contract of insurance issued by an insurer shall be construed to contain a provision that all basic loss benefits provided therein shall be in excess of any valid and collectible benefits otherwise provided through such program, group, contract or other arrangement as designated at the election of the owner or operator which shall be primary.

(c) An insurer providing basic loss benefits and tort liability in accordance with the provisions of subsection (b) above shall reduce the cost of such contract of insurance to reflect the anticipated reduction in basic loss benefits payable by the insurer by reason of the election of the owner or operator to provide substitute security.

The regulations of the Insurance Department implementing this section, 31 Pa. Code § 66.53, further provide:

(b) Insurers providing basic loss benefits and tort liability coverage shall make available an option to have Basic Loss Benefits Coverage pay only those amounts not paid by a program, group, contract, or other arrangement which provides security for either of the following:

(1) Professional medical treatment and care.

a demand was made for its repayment (if such a demand was ever made). Also, given that the court could not determine whether any medical benefits were overdue to appellant, we are puzzled by the court's readiness to assess interest against appellant but not against appellee.

(2) Work loss coverage for the insured. A named insured who elects one or both such options shall be afforded an appropriately reduced premium in accordance with the rates filed with the Insurance Commissioner.

(c)

(1) Basic loss benefit insurers may require the named insured to sign a sworn affidavit certifying the existence of such coverage and reasonable information as to the extent of such coverage. Insurers may also require the named insured to give reasonable notice of termination of such coverage to permit proper rating of coverage under this section. If no named insured has such coverage in effect at the time an accident occurs and the named insured has not previously notified the insurer, a $250 deductible for professional medical treatment and care, or a two week waiting period for work loss, or both, as appropriate, shall apply, but only against the named insured.

■ The memorandum of law attached to appellee's motion for summary judgment includes exhibits that indicate that appellant's father, the policyholder, had chosen the option provided by § 203(b) and had received a reduction in premium as mandated by § 203(c).[3]

. ■ However, appellant's complaint does not indicate appellant's relationship to James Zepp, nor whether appellant

**3.** Appellee's exhibits are not properly part of the record because they were attached to the memorandum of law that accompanied the motion for summary judgment rather than being made part of the motion or being presented as part of an affidavit in support of the motion. The memorandum and the lower court's opinion both refer to a deposition of one of appellee's employers, but the deposition was not made part of the record. The memorandum states that appellant was overpaid on his work loss claim by $136.19, and this figure is repeated by the lower court in its opinion—although the court states that it "does not completely agree with [appellee's] arithmetic" (Slip Op. at 2). However, we can find no support in the record for appellee's figure. We mention these matters because further proceedings will be necessary. Should another motion for summary judgment be filed, the court and both parties should confine themselves to matters of record.

was a passenger or a driver, nor whether the automobile named in the policy issued to James Zepp was involved in the accident. Although appellee's motion for summary judgment alleges that James Zepp is appellant's father, and this is admitted by the answer, nothing of record establishes whether appellant was a member of his father's household or could be considered a "named insured" under the terms of the policy issued to his father. Also, while appellee's motion for summary judgment and the lower court's opinion both assume that James Zepp did not have the required collateral insurance in force, neither is that fact established of record.[4]

It is therefore apparent that the unresolved issues of fact regarding the amount of appellant's medical expenses and whether appellee properly rejected appellant's claim may not be avoided by the calculation resorted to by the lower court.

Reversed.

4. The lower court found that a one week waiting period for work loss benefits applied. In doing so, the court confused the deductible option, which a carrier is permitted to offer, 40 P.S. § 1009.202 (e)(2), and which is limited to a one week waiting period, with the two week waiting period authorized by 31 Pa.Code § 66.53(c)(1). Because appellee has not claimed that any election under 40 P.S. § 1009.-202(e)(2) was ever made, appellant is either subject to a two week waiting period or to no waiting period at all, depending on whether he is a "named insured" under his father's policy or not.