176

511 A.2d 818

DISTRICT COUNCIL 33, AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL–CIO, by Earl STOUT, as Trustee ad litem, and Earl Stout; Albert Johnson; Harry Dargan; George Winns; John Everett; Leonard Tilghman; George Wroten; Earl Williams; Edward Simpkins; Edward Williams; and Francis Rooney, Trustees of District Council 33 Municipal Workers Health and Welfare Fund, Appellants at No. 1463 & 2016 PHL 85,

v.

CITY OF PHILADELPHIA, Appellant at No. 1511 & 1943 PHL 85.

Superior Court of Pennsylvania.

Argued Feb. 4, 1986.

Filed April 25, 1986.

Reargument Denied July 8, 1986.

Robert C. Daniels, Philadelphia, for appellants (at 1463 & 2016) and for appellees (at 1511 & 1943).

Barbara Mather, Assistant County Solicitor, Philadelphia, for appellant (at 1511 & 1943) and for appellee (at 1463 & 2016).

Before WICKERSHAM, McEWEN and JOHNSON, JJ.

WICKERSHAM, Judge:

These four consolidated appeals are taken from the orders of April 26, 1985 and July 10, 1985 of the Court of Common Pleas of Philadelphia County. They arise out of a dispute between the City of Philadelphia ("the City") and District Council 33, American Federation of State, County and Municipal Employees ("District Council 33") concerning

the meaning of the 1982–84 Collective Bargaining Agreement between the parties.

Trustees for the District Council 33 Municipal Workers Health and Welfare Fund ("the Fund") filed a complaint in equity and a motion for preliminary injunctive relief on January 18, 1983 against defendant-below, the City, based on allegations that the City had breached its obligation to pay certain sums of money to the Fund. A period of litigation followed which resulted in the disqualification of original counsel for District Council 33. *City of Philadelphia v. District Council 33*, 503 Pa. 498, 469 A.2d 1051 (1983). Subsequently, the chancellor issued a preliminary injunction in April, 1984 and made certain findings of fact after the initial hearing on this matter. After further trial proceedings in 1984 and 1985, the chancellor issued additional findings of fact after the final hearing in April, 1985. The City filed a timely motion for post-trial relief. On April 26, 1985, the court issued an order requiring the City to pay an additional $15,879,215.36 to the Fund. Both the City and District Council 33 filed timely exceptions and motions for post-trial relief. On May 24, 1985, District Council 33 filed an appeal from the order of April 26, 1985 at No. 1463 Philadelphia, 1985. The City filed a cross-appeal at No. 1511 Philadelphia, 1985. On July 10, 1985, the chancellor denied both parties' motions in an opinionless order. The City subsequently filed an appeal from that order to our court at No. 1943 Philadelphia, 1985 and District Council 33 filed a cross-appeal at No. 2016 Philadelphia, 1985.

■ At the outset, we must determine which of the above appeals are properly before us. We conclude that the appeal and cross-appeal at Nos. 1463 and 1511 Philadelphia, 1985 were taken prematurely in that they were taken after the filing but before the disposition of motions for post-trial relief. We therefore quash those appeals. The appeal and cross-appeal at Nos. 1943 and 2016 however, we find properly before this court. *See* Pa.R.A.P. 301. Accordingly, we now turn to the issues raised therein.[1]

1. The City raises the following issues on appeal:

Initially, we examine the claims of appellant, the City. After a thorough examination of the briefs of the parties, the relevant caselaw and the extensive record in this case, we affirm the order of the chancellor in the court below.

We begin by noting that our scope of review in such matters is closely confined. Appellate review of equity matters is limited to the determination of whether the chancellor committed an error of law or abuse of discretion; a final decree in equity will not be disturbed unless it is unsupported by evidence or demonstrably capricious. *Sack v. Feinman*, 489 Pa. 152, 413 A.2d 1059 (1980), *decided after remand*, 495 Pa. 100, 432 A.2d 971 (1981); *Rosen v. Rittenhouse Towers*, 334 Pa.Super. 124, 482 A.2d 1113 (1984).

> I. Whether the Trial Court erred in interpreting the 1982–84 Collective Bargaining Agreement between the City of Philadelphia and District Council 33, AFSCME, with respect to the City's health benefit obligation in a manner which is contrary to the plain meaning of the Agreement, contrary to the past practices of and prior usage between the parties, and contrary to the intention and understanding of the City's chief negotiator (now Mayor)?
> II. Whether the Court, having concluded that the City is obligated to pay the costs incurred by the District Council 33 Health & Welfare Fund to provide health benefits to eligible City employees and their dependents, erred in requiring the City to pay to the Fund an amount which is not based upon actual costs, which ignores the opinion of both parties' expert witnesses, and which generates a $12 million profit for the Fund, for the 18 month period, January 1, 1983, through June 30, 1984?
> III. Whether the Court erred in refusing to permit the City's reasonable requests for relevant discovery and in refusing to preclude evidence offered by the Plaintiffs on matters as to which discovery had been precluded?
> Brief for Appellant at viii.
> District Council 33 presents the following issue in its cross-appeal: Did not the chancellor in equity misapply the expert opinion testimony of Price-Waterhouse (District Council 33's expert witness in this case) and err, in part, by arriving at an internally inconsistent finding of fact as to the monthly monetary amount that the District Council 33 Health and Welfare Fund was entitled to receive from the City of Philadelphia, per union member per month, and, consequently, award a monetary amount, per union member per month, that was both inadequate and not supported by the evidence in the record?
> Brief for Cross-appellant at 3.

■ Applying this standard, we now address appellant's first issue regarding the chancellor's interpretation of the City's obligations to the Fund under the collective bargaining agreement in effect between the parties from July 1, 1982 to June 30, 1984. Appellant argues that the chancellor erred in referring to extrinsic evidence to determine the intent of the parties regarding that obligation. We disagree.

In construing a contract, the intention of the parties is paramount and the court will adopt an interpretation which under all circumstances ascribes the most reasonable, probable, and natural conduct of the parties, bearing in mind the objects manifestly to be accomplished. *Unit Vending Corp. v. Lacas*, 410 Pa. 614, 190 A.2d 298 (1963). Where the words of the contract are clear and unambiguous, the intent of the parties must be determined exclusively from the agreement itself. *Kennedy v. Erkman*, 389 Pa. 651, 133 A.2d 550 (1957). Where the language of the written contract is ambiguous, extrinsic or parol evidence may be considered to determine the intent of the parties. *In re Herr's Estate*, 400 Pa. 90, 161 A.2d 32 (1960). While courts are responsible for deciding whether, as a matter of law, written contract terms are either clear or ambiguous; it is for the fact finder to resolve ambiguities and find the parties' intent. *Easton v. Washington County Insurance Co.*, 391 Pa. 28, 137 A.2d 332 (1957); *Castellucci v. Columbia Gas of Pennsylvania, Inc.*, 226 Pa.Super. 288, 310 A.2d 331 (1973).

A contract will be found to be ambiguous:

[I]f, and only if, it is reasonably or fairly susceptible of different constructions and is capable of being understood in more senses than one and is obscure in meaning through indefiniteness of expression or has a double meaning....

Ambiguities may be either patent or latent. A patent ambiguity appears on the face of the instrument and arises from the defective, obscure, or insensible language used. *Steuart v. McChesney*, 498 Pa. 45, 444 A.2d 659

(1982). Latent ambiguities arise from extraneous or collateral facts which render the meaning of a written contract uncertain although the language, on its face, appears clear and unambiguous. *Id.*

*Metzger v. Clifford Realty Corp.*, 327 Pa.Super. 377, 385–86, 476 A.2d 1, 5 (1984) (footnote omitted). In light of the facts of this case, such a latent ambiguity existed in the clause addressing health and welfare benefits under the agreement which provided:

23. *HEALTH AND WELFARE PROGRAM*

\* \* \* \* \* \*

B. Each full-time employee in a class or position represented by District Council # 33 shall have health and welfare benefits *as such benefits are presently defined* including major medical family coverage, under the Blue Cross/Blue Shield group health medical plan, with the City paying the full contribution of such benefits, to District Council 33 Health and Welfare Fund. (*1975–76*) (as of 1/1/81 receive $92.00 per month).

Agreement between the City of Philadelphia and District Council 33, AFSCME, AFL–CIO, July 1, 1982—June 30, 1984 at 23.B. [emphasis added].

 The chancellor properly resolved any ambiguity as to the term "as such benefits are presently defined" by considering evidence regarding its meaning as understood by the principals to the agreement, former Mayor Frank Rizzo and Earl Stout, President of District Council 33. The chancellor concluded that based on this testimony, the ambiguous phrase should be read to have the same meaning which was attached to it by both parties. *See Demharter v. First Federal Savings and Loan Association of Pittsburgh*, 412 Pa. 142, 194 A.2d 214 (1963). *See also* Restatement of Contracts 2d, § 201(1). ("Where the parties have attached the same meaning to a promise or agreement or a term thereof, it is interpreted in accordance with that meaning").

Accordingly, the chancellor found that:

10. The City agreed to "provide 100 percent medical coverage to city employees" consistent with the 100 percent medical coverage provided by District Council 33 to its union members prior to and at the time of the contract negotiations.

\* \* \* \* \* \*

18. The Agreement requires that defendant pay over to the Health and Welfare Fund such amount of money per union member per month as it would cost to purchase a plan that would provide the same full level of health care benefits as provided by District Council 33 to its members immediately preceding the effective date of the current Agreement.

Findings of Fact, May 4, 1984 at 5 and 7.

Where a chancellor's findings are fully supported by competent evidence of record, they are binding upon a reviewing court. *Abraham v. Mihalich*, 330 Pa.Super. 378, 479 A.2d 601 (1984). We can find neither an abuse of discretion nor error of law, which would otherwise warrant our disturbing the chancellor's findings on this issue.[2]

▉▉▉ The City next challenges the chancellor's award of damages as not calculated on a "cost" basis. Once again applying our narrow scope of review, *see Sack v. Feinman*,

2. The City would instead have its obligation limited to the cost of Blue Cross A700 Plan benefits as defined by section 27.0111 of the Civil Service Regulations. We note, however, that as the chancellor found, by 1983 the figures provided under the A700 Plan were "an inappropriate guide" to the City's obligation under 23.B of the agreement because the number of employees covered by the A700 Plan was either extremely small or the plan itself had become nonexistent. While the chancellor did not speak to the issue of whether the civil service regulation otherwise governed pursuant to either the preamble or the savings clause of the agreement, we believe these clauses never became operative since 23.B. was never found to conflict with the regulation and pertained to a separate benefit package. Finally, we are not of the opinion that past practice between the parties otherwise substituted the A700 Plan for the City's obligation as set out in 23.B. of the agreement. While the City's payments to the Fund may have been "consistent with" the former plan, this indicates only that the City unilaterally attempted to alter the obligation previously undertaken in the agreement. District Council 33 continued to rely on the City's obligation under 23.B. and that agreement continued to bind the parties.

*supra, Rosen v. Rittenhouse Towers, supra,* we must conclude that the chancellor acted within his discretion in this finding and committed no error of law. At trial, expert witnesses for the City and District Council 33 presented opposing views of the proper measure of damages. After consideration of the testimony and the reports of the respective experts, the chancellor was persuaded by the opinion of the Price Waterhouse, expert for District Council 33. The chancellor was the trier of the facts and it was his duty to resolve the conflict in the testimony. *Pirilla v. Bonucci,* 320 Pa.Super. 496, 467 A.2d 821 (1983). Because his findings are fully supported by competent evidence they are binding upon this court. *Abraham v. Mihalich, supra.*

█ Finally, the City contends that the chancellor erred in certain discovery rulings and in improperly shifting the burden of proof at the preliminary hearing. Regarding these matters, we once more find the chancellor committed no error of law and acted properly within his discretion. Since a trial court must oversee the ongoing discovery between the parties during the course of the litigation, it is within the court's discretion to determine the appropriate measures necessary to insure adequate and prompt discovery of matters permitted under the Rules of Civil Procedure. *Stern v. Vic Snyder, Inc.,* 325 Pa.Super. 423, 473 A.2d 139 (1984).

█ In this case, the deposition testimony regarding the 1975 negotiations sought by the City was not relevant to the pending action and thus was undiscoverable under the rules. *See* Pa.R.C.P. No. 4003.1.[3] Besides, one of the

---

**3.** Rule 4003.1 provides as follows:
 **Rule 4003.1. Scope of Discovery Generally**
 Subject to the provisions of Rules 4003.2 to 4003.5 inclusive and Rule 4011, *a party may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action,* whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, content, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the

proposed deponents had previously testified and been cross-examined by the City while the other testified that he had no specific recollection concerning the 1975 negotiations. Similarly, the requested records concerning operating costs of the Fund were irrelevant since the City's obligation was not governed by those costs. In any event, sufficient evidence was provided to the City in this regard, including trustees minutes, financial audits and other records. We do not believe that the City was entitled to further discovery of these matters. We note also that the City has failed to identify any information produced at trial which was denied to it during pre-trial discovery.

█ Lastly, the City argues that the court improperly shifted the burden of proof from District Council 33 to the City at the commencement of the final hearing, when the court stated that its preliminary findings of fact would be taken into account. We find the City's burden of proof claim previously rebutted by our supreme court in *Lackey v. Sacoolas*, 411 Pa. 235, 191 A.2d 395 (1963), where at the final hearing of an injunction, the court properly incorporated into the record as part of the evidence to be considered, the testimony which had been presented at the preliminary hearing. Accordingly, we hold that the chancellor acted within his discretion in all respects discussed above and affirm the order of the Honorable Lawrence Prattis, dated July 10, 1985.

█ We now turn to District Council 33's cross-appeal which disputes the amount of the chancellor's award, despite his decision in its favor. Applying our narrow scope of review, we are obliged to conclude that the chancellor committed no abuse of discretion nor error of law by "misapplying" the testimony of District Council 33's expert, a representative of Price Waterhouse. In being persuaded by that expert's evidence, the chancellor was not required

information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.
(emphasis added)

to adopt the expert's opinion verbatim in his finding of damages. The chancellor's finding regarding the amount of damages was based on all the evidence, including that adduced from the expert's testimony and is not so inconsistent with his other findings so that it should be disturbed. *See In re Estate of Billinger*, 451 Pa. 77, 301 A.2d 795 (1973).

We therefore affirm the order of the Honorable Lawrence Prattis, dated July 10, 1985 with respect to the cross-appeal as well.

Appeals at Nos. 1463 and 1511 Philadelphia, 1985 are quashed. We affirm the order of the court below with respect to appeals Nos. 1943 and 2016 Philadelphia, 1985.