537 A.2d 1367

DISTRICT COUNCIL 33, AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL–CIO, by Earl STOUT, as Trustee ad Litem; and Earl Stout; Albert Johnson; Frances Rooney; Robert Lucas; James Rawls; Donald Gallimore; Edward Simpkins; Leonard Tilghman; Ann Cohen; George Wroten; and Earl Williams, Trustees of District Council 33 Municipal Workers Health and Welfare Fund, 3001 Walnut Street, Philadelphia, Pennsylvania, 19104, Appellants,

v.

CITY OF PHILADELPHIA.

Supreme Court of Pennsylvania.

Argued Nov. 10, 1987.

Decided Feb. 26, 1988.

Robert C. Daniels, Philadelphia, for appellants.

John M. Myers, Chief Deputy City Sol., Charles W. Bowser, Luther E. Weaver, III, Philadelphia, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

This is an appeal from an order of the Superior Court, 354 Pa.Super. 176, 511 A.2d 818, which affirmed a grant of injunctive relief by the Court of Common Pleas of Philadelphia requiring that the City of Philadelphia make certain

payments for health insurance benefits to the Municipal Workers Health and Welfare Fund maintained by District Council 33 of the American Federation of State, County, and Municipal Employees. The duty to make the payments arose under provisions of the 1982–1984 Collective Bargaining Agreement between the City and District Council 33. At issue in the proceedings below were the extent of medical coverage that the City was obligated to provide for its municipal employees and questions as to the cost of such coverage.

In the Court of Common Pleas, the chancellor concluded that the City was contractually obligated to pay for "full 100% coverage" of all medical expenses (i.e., 365 day in-patient hospitalization with no co-pay provisions or obligations, no deductibles, no cap on the total amount of coverage for health and medical care for each union member and dependent family members, and full and complete payment of all hospital, medical, and doctor bills). The instant appeal arises as a result of the fact that, after determining that "full 100% coverage" was due, the chancellor proceeded to make findings pertaining to the cost of such coverage, but, in so doing, made findings which District Council 33, appellant herein, claims to be inherently inconsistent and unsustainable.[1] We agree that the chancellor's findings regarding the cost of medical coverage cannot be sustained.

It is well established that, in reviewing the findings of fact below, a finding which is inconsistent with another as to a material matter cannot be sustained. *Kaufmann's Estate*, 281 Pa. 519, 523, 127 A. 133 (1924). See also *Gassner v. Gassner*, 280 Pa. 313, 318, 124 A. 483 (1924). In

1. This Court denied a Petition for Allowance of Appeal filed by the City, which involved the City's contractual obligations to provide extensive medical coverage benefits under the 1982–1984 Collective Bargaining Agreement, thus denying the City's attempt to obtain further review of its contractual obligations regarding such coverage. The Petition for Allowance of Appeal filed by District Council 33 was, however, granted. District Council 33 has raised only the issue of whether the costs of medical coverage were properly determined by the Court of Common Pleas.

the present case, the chancellor set forth findings of fact which expressly accepted as credible and controlling the expert testimony provided by a witness for District Council 33, such witness having been a specialist in actuarial and insurance matters from the accounting firm of Price Waterhouse. The witness testified regarding the cost of providing "full 100% coverage" of medical expenses for the municipal employees in question. The need to make such findings arose because the extensive coverage which the City had agreed to provide its employees, through payments to the Municipal Workers Health and Welfare Fund, was unparalleled by existing medical coverage plans, and, thus, there was not in existence any rate schedule that could be referred to for the exact cost of providing such benefits.

An internal inconsistency in the findings of the chancellor arose in that the findings expressly purported to be adhering to the testimony of the expert witness from Price Waterhouse, but the findings set forth cost determinations that ignored essential aspects of that same testimony. Specifically, the findings that contained the inconsistencies were the following:

> After a review of the testimony and opinion of witnesses, and a study of the reports of the respective experts, the court is persuaded by the opinion of [District 33's] expert, Price Waterhouse. The court's preliminary order [setting the level of the City's payments to the Municipal Workers Health and Welfare Fund] was based on a projection of cost of the Blue Cross plan which most closely approximated the coverage extended.... A more detailed projection of the data relating to the same plan based upon the Price, Waterhouse report persuades the court that a more accurate estimation of the requirements of the [City's] obligation under the Collective Bargaining Agreement would be $157.00 per member per month during the period January, 1983 to June, 1983 and $188.00 per member per month during the period July, 1983 to June, 1984....

The Blue Cross plan referred to in the finding of fact was Blue Cross Plan 100, which provided extensive benefits

coverage, but which fell short of providing the "full 100% coverage" that the City was contractually bound to pay for under the Collective Bargaining Agreement. Thus, the rates charged for Blue Cross Plan 100 were a mere approximation of the higher level of rates that would be incurred for the Municipal Workers Health and Welfare Fund to supply "full 100% coverage," according to the testimony of the expert witness from Price Waterhouse. The facts that Blue Cross Plan 100 was the most comprehensive program offered by Blue Shield and that the municipal employees were entitled to more extensive coverage than Blue Cross Plan 100 afforded were expressly stated in the findings. The findings also noted, "The employees who are members of District Council 33 have ... an extraordinarily generous health and welfare plan. It certainly exceeds the coverage customarily offered by other commercial or non-profit health insurance providers."

Although the testimony of the expert witness clearly stated that it was necessary to make adjustments in the monthly rate quotations for Blue Cross Plan 100 in order to reflect the higher level of benefits due the municipal employees in question, such benefits having been perhaps aptly characterized by the chancellor as "extraordinarily generous," the chancellor failed to make any such adjustments. Rather, the City was ordered to pay the amounts set forth in the findings of fact, supra, consisting of $157.00 per employee per month during the period January, 1983 to June, 1983 and $188.00 per employee per month during the period July, 1983 to June, 1984, these being the estimated costs of providing Blue Cross Plan 100 coverage. If the rate adjustments had been made as proposed by the expert witness, so as to provide for "full 100% coverage," the rates for these periods would have been, respectively, $181.00 and $216.00 per member per month.

In short, payment was ordered for amounts that did not, based upon the findings of the chancellor, correspond to the "full 100% coverage" that municipal employees were held to be entitled to receive. Further, while finding that the

expert testimony from Price Waterhouse was to be followed in setting the amounts to be paid for medical coverage, the chancellor ordered payment of amounts that did not correspond to that testimony. Under these circumstances, the order specifying payments must be reversed and the case remanded to the Court of Common Pleas for correction of its findings and for entry of an order that is consistent with those findings.[2]

Order reversed, and case remanded.

McDERMOTT, J., files a concurring opinion.

McDERMOTT, Justice.

On the extremely limited issue which has been brought before us, regarding the cost of providing "full 100% coverage," I am constrained to agree with the majority that the arbitrator's findings of fact cannot be sustained. I therefore concur in the result.

2. We find no merit in the City's contention, now raised for the first time, that the Court of Common Pleas lacked subject matter jurisdiction in this case. Although the Public Employe Relations Act, 43 P.S. § 1101.1301, vests the Pennsylvania Labor Relations Board with exclusive original jurisdiction in cases where redress is sought for unfair labor practices enumerated in the Act, it is well established that equitable jurisdiction exists in the Court of Common Pleas where, as in the present case, a union seeks judicial enforcement of a labor contract. *Hollinger v. Dept. of Public Welfare,* 469 Pa. 358, 365 n. 10, 367, 365 A.2d 1245, 1249 n. 10, 1250 (1976).