574 A.2d 1068

**William KERNS and Denise Kerns, Appellant,**

v.

**METHODIST HOSPITAL and California Plant
Protection, Inc., Appellee.**

Superior Court of Pennsylvania.

Argued Aug. 23, 1989.

Filed May 2, 1990.

Theodore C. Forrence, Jr., Philadelphia, for appellant.

Melvin R. Shuster, Philadelphia, for Methodist Hosp., appellee.

William C. McGovern, Philadelphia, for Cal. Plant Protection, appellee.

Before CIRILLO, President Judge, and KELLY and CERCONE, JJ.

KELLY, Judge:

In this case we are called upon to determine whether a hospital and a security firm may be held liable for injuries to a pizza deliveryman suffered in an armed robbery by unknown assailants on hospital property guarded by a private security firm, based upon a theory of a negligent undertaking to provide adequate security. We affirm the order granting summary judgment in favor of the hospital and the security firm.

We are also asked to determine whether the trial court abused its discretion in proceeding to the merits of the summary judgment motion when an order extending the time for discovery had been signed the day before the motion for summary judgment was filed, and specific discovery requests were pending at the time the summary judgment motion was considered and decided. We find no abuse of discretion.

## I. *Standard of Review*

In this case we are called upon to determine the propriety of an order granting summary judgment. The standard for granting summary judgment is well settled:

A motion for summary judgment may properly be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law. In passing on a motion for summary judgment, the court must examine the record in

the light most favorable to the non-moving party. [However], it is clear that to survive a motion for summary judgment, the non-moving party may not rely merely upon the allegations of the contested pleadings, but must set forth specific facts by way of affidavit, or in some other way as provided by the rule, demonstrating that a genuine issue exists.

*Salerno v. Philadelphia Newspapers,* 377 Pa.Super. 83, 88, 546 A.2d 1168, 1170–71 (1988) (collecting cases, citations omitted); *see also* Pa.R.C.P. 1035.

## II. *Facts and Procedural History*

On March 18, 1985, appellants, William and Denise Kerns (the Kerns), filed a civil complaint against appellees Methodist Hospital (the Hospital) and California Plant Security (the Security Firm). The complaint contained three counts; it claimed that the Hospital's and the Security Firm's negligence in failing to adequately warn or protect William Kerns caused William Kerns to suffer a violent criminal assault by unknown third parties and injuries incident thereto, Denise Kerns suffered a loss of consortium as the result of William Kerns' injuries, and the negligence involved was so egregious as to warrant imposition of punitive damages. The factual allegations underlying the complaint may be summarized as follows.

On April 2, 1984, Mr. Kerns was employed by Giovanni's Pizza to deliver pizzas throughout South Philadelphia, including the area where the Hospital is located. Sometime prior to 7:00 p.m. his employer gave him a single pizza to deliver at the nurses' residence on the grounds of the Hospital. The drive to the Hospital took four or five minutes.

On four or five prior occasions, Mr. Kerns had delivered pizzas to the nurses' residence. The residence is located in a private area on the Hospital grounds, and there is a gate across the access road to the nurses' residence to keep out unauthorized vehicles. On each of the prior occasions, Mr. Kerns would drive to the gate and sound his horn. A

security guard would come to the gate, Mr. Kerns would state his purpose, and the gate would then be raised to permit him to drive up to the entrance of the nurses' residence and deliver his pizzas.

On April 2, 1984, no guard came to the gate when Mr. Kerns sounded his horn. Because Mr. Kerns saw no guard and decided he could not wait, he backed his car onto the street, and parked on a nearby side street. It was dusk by then. Mr. Kerns walked around the gate and to the nurses' residence in about a minute or a minute and a half. He was inside the nurses' residence about 30 seconds, where he delivered the pizza, was paid, and left.

Mr. Kerns had counted the money and put it in his pocket before leaving the nurses' residence. Mr. Kerns explained, "from making deliveries, you don't count your money on the outside or anything." (R.R. at 149a). About 25 feet from the building, Mr. Kerns was assaulted by two unknown assailants. One poked a gun in his ribs, the other stood in front of him and demanded his valuables. Mr. Kerns delivered his wallet, and was then kicked in the groin and punched as he went down to the ground. The entire assault took only "30 seconds" though "it felt like an eternity." (R.R. at 141a–151a).

Between March 18, 1985, and November 14, 1988, pleadings and counterpleadings were filed and discovery was conducted. On November 14, 1988, an order was signed extending the discovery period until February 28, 1989. The next day, however, the Hospital and the Security Firm filed for summary judgment. On December 5, 1988, the Kerns filed a subpoena on the Philadelphia Police Department for police documents pertaining to criminal assaults in the area of the Hospital for a three year period prior to April 2, 1984. On December 8, 1988, the Kerns sent a letter to the Hospital's counsel requesting production of the security log, from which excerpts had been provided previously, and all similar logs for prior years. On December 22, 1988, the Kerns filed their answer in opposition to the motion for summary judgment. On January 3, 1989, the trial court

granted summary judgment to the Hospital and the Security Firm. This timely appeal follows.

On appeal, the Kerns contend that the trial court abused its discretion in proceeding on the motion for summary judgment despite the prior entry of an order extending the discovery period, in light of actually outstanding discovery requests at the time summary judgment was granted. The Kerns also contend that there was sufficient evidence of a voluntary assumption of a duty by the Hospital and the Security Firm to withstand summary judgment. We find *no merit in either contention.*

### III. *1035(e) Continuance/Outstanding Discovery*

■ The Kerns contend that the trial court erred in proceeding to rule on the motion for summary judgment because an order extending the period for discovery had previously been entered, and two proper discovery requests remained outstanding at the time summary judgment was granted. We find no merit in the contention.

The Hospital and the Security Firm respond initially that we need not reach this issue, as the Kerns failed to file the affidavits of necessity for further discovery required to trigger consideration of a continuance pursuant to Pa.R. C.P. 1035(d) and Pa.R.C.P. 1035(e):

(d) Supporting and *opposing affidavits shall be made on personal knowledge,* shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the signer is competent to testify to the matters stated therein. Verified or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not

so respond, summary judgment, if appropriate, shall be entered against him.

(e) Should it appear from *the affidavits* of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

(Emphasis added).

In this case, the Kerns responded to the motion for summary judgment by filing an answer and memorandum of law in opposition to the motion for summary judgment which asserted, among other things, that summary judgment was premature in light of outstanding discovery requests directed toward material issues of fact. Attached to the memorandum as "exhibits" were copies of the signed discovery requests. Counsel also signed a "verification" indicating that the contents of the answer and memorandum were true and correct to the best of his knowledge, information, and belief, and that the verification was being made subject to the penalties of 18 Pa.C.S.A. § 4904.

Exhibits attached to a memorandum of law filed in opposition to summary judgment are not "affidavits" *made on personal knowledge* (as opposed to information and belief) as required by Pa.R.C.P. 1035(d) and Pa.R.C.P. 1035(e). *See Zepp v. Nationwide Ins.,* 290 Pa.Super. 28, 32, 434 A.2d 112, 114 n. 3 (1981); *Irrera v. SEPTA,* 231 Pa.Super. 508, 331 A.2d 705 (1974). The critical distinction is that a verification based on "information and belief," does not meet the requirement of an affidavit based on "personal knowledge." *See Phaff v. Gerner,* 451 Pa. 146, 303 A.2d 826 (1973). The Kerns thus failed to file a proper affidavit in opposition to summary judgment.

The failure to comply with Pa.R.C.P. 1035(d) and Pa.R.C.P. 1035(e) *may* result in a determination that any claimed prematurity of summary judgment was waived. In *Curran v. Philadelphia Newspapers,* 497 Pa. 163, 439 A.2d 652

(1981), our Supreme Court held that where affidavits submitted under Pa.R.C.P. 1035(d) addressed solely the merits of the summary judgment claim, a subsequent claim that a continuance to complete further discovery should have been granted must be deemed to have been waived. 439 A.2d at 658; *Ruditsky v. Orben*, 121 Pa.Cmwlth. 215, 550 A.2d 836 (1988) (same, *citing Curran* ). Here, however, the defect is one of form, rather than content.

In *Thomas v. Duquesne Light*, 347 Pa.Super. 492, 500 A.2d 1163 (1985), this Court held that when the party opposing summary judgment *expressly declined a trial court request that the party file the required counter affidavits* and outstanding discovery requests could not have produced information in support of the party's opposition to summary judgment, the existence of outstanding discovery requests did not preclude summary judgment. 400 A.2d at 1167. Here, the trial court mentioned neither the defect in form, nor the outstanding discovery requests, when granting summary judgment, or in its opinion filed pursuant to Pa.R.A.P. 1925(a).

We do not construe the prior case law to *mandate* a finding of procedural default with regard to the failure to file a proper affidavit of opposition. *Zepp v. Nationwide Ins., supra,* was decided on other grounds and merely noted the defect in form to prevent repetition of the error on remand. 434 A.2d at 114 n. 3. In *Irrera v. SEPTA, supra,* this Court expressly declined to rest on the procedural ground, and instead went on to determine that summary judgment was proper *even if* the improper "exhibits" were considered. 331 A.2d at 707–08. Likewise, despite the absence of a proper affidavit of opposition in *Thomas v. Duquesne Light, supra,* this Court nonetheless went on to consider whether the outstanding discovery requests could have led to evidence which might enable the party to withstand summary judgment. 500 A.2d at 1166–67.

Here, the fact and relevance of the outstanding discovery requests are *uncontested*. Both the Hospital and the Security Firm conceded in their briefs to this Court that the

Kerns, in fact, had made the discovery requests as had been indicated in the Kerns' memorandum of opposition filed in the trial court. (*See* Hospital's Brief at 3–4; Security Firm's Brief at 4). *Cf. Phaff v. Gerner, supra,* 303 A.2d at 829 (affidavits are not required for undisputed facts). Consequently, we find that defect challenged to be one of *form,* rather than substance. Had the defect been noted in the trial court, it could have been corrected with ease by the substitution of an "affidavit" on personal knowledge for counsel's insufficient "verification" on information and belief.

■ It is true that some federal courts have strictly construed the federal equivalents of Pa.R.C.P. 1035(d) and 1035(e), and have denied review on the merits in circumstances *arguably* similar to those presented here. *See e.g. Falcone v. Columbia Pictures,* 805 F.2d 115, 117 & n. 2 (3rd Cir.1986). Other federal courts, however, have held that pleadings and outstanding discovery requests may provide sufficient specificity as to the discovery sought and need for such discovery to constitute sufficient compliance with the affidavit requirement to warrant a continuance to complete discovery. *See e.g. Hotel & Restaurant Emp. Union v. Attorney General,* 804 F.2d 1256, 1269 (D.C.Cir. 1986).

We embrace the latter position. In doing so, we note that we in no way restrict the trial court's discretion to direct strict compliance with the rules. Rather, we merely hold that when the defect is not substantive, and the trial court does not elect to direct strict compliance, then substantial compliance may be deemed sufficient compliance. *See* Pa. R.C.P. 126.

■ Our decision to review on the merits the Kerns' contention that summary judgment was premature will be of little solace to the Kerns. On the merits, we find no abuse of discretion in the trial court's decision to deny a continuance to complete further discovery.

The parties have relied exclusively upon federal cases in support of their arguments on the merits of this contention. We shall consider relevant Pennsylvania case law first, and then address briefly the federal authorities cited.

It is well-settled that Pa.R.C.P. 1035(e) controls claims that summary judgment was improvidently granted prior to the completion of necessary discovery. *See Curran v. Philadelphia Newspapers, supra; Ruditsky v. Orben, supra.* It is equally well-settled that the standard of review for an appellate court reviewing a decision to grant or deny a continuance to complete further discovery under Pa.R. C.P. 1035(e) is whether the trial court abused its discretion. *See Wertz v. Kephart,* 374 Pa.Super. 274, 279, 542 A.2d 1019, 1022 (1988); *District Council 33 v. Philadelphia,* 354 Pa.Super. 176, 185, 511 A.2d 818, 823 (1986) *reversed on other grounds,* 517 Pa. 401, 537 A.2d 1367 (1988); *Lombardo v. DeMarco,* 350 Pa.Super. 490, 495, 504 A.2d 1256, 1258–59 (1985).

The Kerns complain that they were not given an adequate opportunity for discovery. The applicable rules provide no timetable for discovery; rather, the parties are permitted to engage in the various types of discovery simultaneously, subject to the supervision of the trial court. In supervising discovery, the trial court has broad discretion to take such action as it deems appropriate to insure *prompt* and *adequate* discovery. *See Wertz v. Kephart, supra; Cavanaugh v. Allegheny Ludlum Steel,* 364 Pa.Super. 437, 528 A.2d 236 (1987); *District Council 33 v. Philadelphia, supra; Lombardo v. DeMarco, supra; Granthum v. Textile Machine Works,* 230 Pa.Super. 199, 326 A.2d 449 (1974).

It may be an abuse of discretion to deny a continuance to complete further discovery when the party opposing summary judgment has been denied an adequate opportunity to conduct reasonable discovery. In *Granthum v. Textile Machine Works, supra,* this Court held that the trial court erred in failing to apply Pa.R.C.P. 1035(e) and in granting summary judgment when the moving party had failed to

disclose necessary documents and records. We concluded by noting that the opposing party was entitled to an opportunity to conduct appropriate discovery. 326 A.2d at 451–52. Similarly, in *Cavanaugh v. Allegheny Ludlum Steel, supra,* this Court held that the trial court had abused its discretion in scheduling a class certification hearing, *sua sponte,* less than five months after the filing of a complicated class action suit, despite the fact that the plaintiff was still pursuing timely discovery on the very issue to be decided in the certification hearing. 528 A.2d at 240.

On the other hand, appellate courts of this Commonwealth have found no abuse of discretion in denying a continuance to pursue further discovery pursuant to Pa.R. C.P. 1035(e) when a reasonable period for discovery had expired, *and* the opposing party failed to demonstrate the materiality of the outstanding discovery *or* the opposing party failed to demonstrate that it had proceeded in a timely manner with respect to the discovery sought. In *Thomas v. Duquesne Light Co., supra,* this Court found no abuse of discretion in denying a continuance because the outstanding discovery requests could not have provided material evidence sufficient to withstand summary judgment had the continuance sought been granted. In *Wertz v. Kephart, supra,* this Court held that the trial court had abused its discretion in permitting an eleventh-hour deposition of a material witness whose identity and whereabouts had been known for more than four years. 542 A.2d at 1022. In *Lombardo v. DeMarco, supra,* this Court rejected a claim that an inadequate discovery period had been permitted. We noted that counsel had failed to commence discovery until after the pleadings were closed, the three and one half months available for discovery after pleadings were closed was more than sufficient given the uncomplicated nature of the case, and the efficacy of the further discovery requested was wholly speculative. 504 A.2d at 1258–59.[1]

---

**1.** In *Lombardo,* the opposing party had also failed to specifically request a continuance. While this distinguishes *Lombardo* from the instant case, it does not diminish the relevance of the other factors noted by this Court in affirming the trial court.

The parties cited various federal cases construing Fed.R. Civ.P. 56(f) which is the federal equivalent of Pa.R.C.P. 1035(e). The Kerns cited cases in which the trial court was held to have abused its discretion in denying a continuance to complete discovery directed toward material issues which had been pursued in a timely manner. *See Garrett v. San Francisco,* 818 F.2d 1515 (9th Cir.1987); *Hotel & Restaurant Employees Union v. Attorney General,* 804 F.2d 1256 (D.C.Cir.1986); *Visa International Service Association v. Bankcard Holders of America,* 784 F.2d 1472 (9th Cir. 1986); *Glen Eden Hospital v. Blue Cross & Blue Shield,* 740 F.2d 423 (6th Cir.1984); *Ward v. United States,* 471 F.2d 667 (3rd Cir.1973). The Hospital and the Security Firm, on the other hand, cited cases in which the trial court was found not to have abused its discretion because a reasonable time for discovery had expired *and* the discovery sought was deemed too speculative *or* the discovery had not been pursued in a timely manner. *See Koplove v. Ford Motor Corp.,* 795 F.2d 15 (3rd Cir.1986); *Mid–South Grizzlies v. N.F.L.,* 720 F.2d 772 (3rd Cir.1983); *see also Landmark Development v. Chambers Corp.,* 752 F.2d 369 (9th Cir.1985); *Pfeil v. Rodgers,* 757 F.2d 850 (7th Cir.1985), *cert. denied,* 475 U.S. 1107, 106 S.Ct. 1513, 89 L.Ed.2d 912 (1985).

 Review of the federal cases cited indicates that they are in harmony with the Pennsylvania case law and merely present different aspects of a relatively uniform approach to such motions, rather than divergent viewpoints as the parties' briefs suggest. From the foregoing authorities we glean the following general rules. Parties must be given a reasonable period of time to pursue proper discovery, and if a summary judgment motion is filed prematurely, the trial court must grant a continuance if the opposing party specifies proper discovery to be sought in a timely manner. On the other hand, if an adequate time for discovery has already expired when a continuance is sought, the party opposing summary judgment must establish both materiality and due diligence with regard to the further

discovery sought. Applying these rules in the instant case, we find no abuse of discretion in the trial court's denial of a continuance to complete further discovery.

Here, the summary judgment motion was filed November 15, 1988, 3 years, 7 months, and 27 days since the initial complaint was filed on March 18, 1985. Both discovery requests outstanding at the time summary judgment was granted were initiated *after* the summary judgment motion had been filed.

On December 5, 1988, the Kerns sent a subpoena to the Philadelphia Police Department requesting any records indicating the occurrence of criminal assaults in the area of the Hospital between April 2, 1981 and April 2, 1984. While this request was directed toward the discovery of evidence which might be material to the Kerns' claims, if the evidence sought was available and favorable, the discovery request was unquestionably speculative. Moreover, there is absolutely no indication why this request could not have been made during the preceding 3 years, 8 months, and 17 days since the complaint was filed on March 18, 1985.

On December 8, 1988, the Kerns sent a letter to counsel for the Hospital requesting production of all the Hospital's security log books for time periods prior to April 2, 1984. While this request was also directed toward the discovery of evidence which might be material to the Kerns' claims if the logs existed and contained favorable evidence, this discovery request was likewise unquestionably speculative. Moreover, the Hospital formally disclosed the existence of security logs in answers to interrogatories dated July 2, 1985, which were filed in the trial court on August 7, 1985. The record discloses further that the Kerns' counsel had a copy of an excerpt of the report of the underlying incident from the security log on December 11, 1985 during the deposition of Gloria Rivers. (R.R. at 153a, 168a). Indeed, the letter requesting this discovery, dated December 8, 1988, stated that the excerpt containing the report of the underlying incident had been provided two years earlier (by then it actually had been *at least* 2 years and *362* days since

the excerpt from the security log had been provided). Again, the Kerns provide no explanation for why the discovery sought could not have been completed in the 3 years, 4 months, and 1 day since formal notice of the existence of security logs had been formally filed in the trial court in the answers to interrogatories.

The Kerns argue that the discovery was required to resolve doubts left by Ms. Gloria Rivers allegedly equivocal deposition testimony concerning the Hospital's and the Security Firm's notice of prior criminal activity. Upon careful review of the deposition testimony, we find it to be *un*equivocal. While Ms. Rivers did state that counsel's broad inquiry as to the occurrence of prior criminal incidents was "pretty hard to answer," she responded unequivocally to follow-up questions by explaining that while no assault or property crimes had occurred previously, the Hospital did have a problem with neighbors committing non-violent trespass offenses by attempting to use private areas of the Hospital grounds as a short cut through the neighborhood. (R.R. at 222a–226a). Rather than suggesting a need for further discovery on the subject, Ms. Rivers' unequivocal testimony underscores the speculative nature of both of the Kerns' eleventh-hour, broad-net, fishing-expedition-style discovery requests.

Moreover, Ms. Rivers' deposition was taken on December 11, 1985. (R.R. at 153a). The Kerns again have failed to indicate why any discovery required as the result of Ms. Rivers' deposition could not have been completed in the 2 years, 11 months, and 24 days which preceded their eleventh-hour discovery request on December 5, 1988, or the 2 years, 11 months, and 27 days which preceded their second eleventh-hour discovery request on December 8, 1988.

Applying the standard previously set forth, we find no abuse of discretion in the trial court's implicit decision not to grant a continuance to complete further discovery under Pa.R.C.P. 1035(e), and to proceed instead to decide the merits of the summary judgment motion. An ample period for discovery had already passed, and the

Kerns failed to establish either materiality or due diligence with respect to the discovery sought. Hence, we find no merit in the Kerns' first contention on appeal.[2]

## IV. *Alleged Negligent Undertaking to Provide Security*

 Appellant contends that the Hospital and the Security Firm voluntarily assumed a duty to protect or warn Mr. Kerns by instituting a program of security on the Hospital grounds. Appellant argues that the expert opinion it attached to its memorandum in opposition to summary judgment as an exhibit,[3] raised a question as to a material fact concerning the Hospital's and the Security Firm's alleged negligence concerning their voluntary undertaking to provide security which precluded summary judgment. We cannot agree.

The general thrust of the expert opinion upon which the Kerns relied is accurately reflected in the summary of that report, which stated:

*Summary*

When establishing a security system, the key is security in depth, which is the utilization of many protective

---

**2.** The Kerns' reliance upon the discovery order of November 14, 1988, is misplaced. By its own terms the order stated, "no discovery other than the above shall be allowed." "Above," however, no discovery was specified in the blanks provided. (R.R. at 111a). Hence, the order was essentially illusory. More importantly, orders extending the period permitted for discovery are interlocutory and subject to reconsideration. *Bruno v. Elitzky*, 515 Pa. 47, 526 A.2d 781 (1987); *Markey v. Marino*, 361 Pa.Super. 92, 521 A.2d 942 (1987). When a summary judgment motion is filed prior to the expiration of a time period through which the trial court has authorized discovery to continue, reconsideration of an interlocutory order permitting further discovery is implicit in the decision whether to permit further discovery under Pa.R.C.P. 1035(e) or to proceed on the merits of the summary judgment motion. In exceptional circumstances, the existence of such an order might tip the balance in a due diligence inquiry. No such exceptional circumstances exist here. Rather, the balance is heavily weighted against further untimely discovery, and the illusory order provides no weight to alter that balance.

**3.** Again, we note that the "exhibit" was not a proper "affidavit." Pa.R.C.P. 76; Pa.R.C.P. 1035(d); Pa.R.C.P. 1035(e). Nonetheless, as in *Irrera*, we address the merits as if the exhibit had been presented in a proper affidavit.

measures, including security personnel and physical security systems, working together to provide comprehensive security protection. Such a system is vital in the protection of a hospital located in an urban area.

This comprehensive system begins with providing and documenting training for security personnel at all levels, so that effective policies may be established and that such policies can be followed correctly. Effective staffing levels must be utilized to insure that high risk areas, such as parking lots, have adequate coverage. It is also vital that sufficient staffing be provided to insure that all required post duties, such as the monitoring of closed circuit television cameras and radios and the logging of communications can be properly accomplished.

The use of physical security measures, such as sodium vapor lights, secure fencing and access control points, closed circuit television systems, and the posting of signs indicating that protective measures are in place, are key elements in a comprehensive security program and should be utilized.

It is my opinion that a hospital not utilizing all of these protective measures is not providing adequate security for the employees, patients, and visitors of the institution.

(R.R. at 117a–118a; *see generally* R.R. at 112a–118a). Essentially, this expert was of the opinion that a *different* program of security than that actually in place ought to have been utilized by the Hospital and the Security Firm, and that the one actually utilized was inadequate.

Because the Kerns failed to establish notice to the Hospital or the Security Firm of a particular threat of violence to its tenants or their invitees from the criminal acts of third parties, we are not called upon to determine whether, or to what extent, the Hospital or the Security Firm had a duty to act to prevent such harm or warn Mr. Kerns of such harm. *Cf. Moran v. Valley Forge Drive–In Theater,* 431

Pa. 432, 246 A.2d 875 (1968); *Murphy v. Penn Fruit*, 274 Pa.Super. 427, 418 A.2d 480 (1980).[4]

The Kerns sought to establish that the Hospital and the Security Firm failed to exercise reasonable care with regard to their voluntary undertaking to provide a program of security on the Hospital grounds. The Kerns, however, misapprehend the nature of the burden imposed incident to such an undertaking.

In *Feld v. Merriam*, 506 Pa. 383, 485 A.2d 742 (1985), our Supreme Court explained:

**4.** We note that there are significant public policy questions relating to the wisdom of privatizing police functions, the proper allocation of the costs of violent crime, the impact of uncertain and/or expensive security requirements on urban business districts and urban economies, as well as practical questions relating to the adequacy of alternative security regimes which all must be considered in determining the extent to which "reasonableness" on the part of merchants in response to the threat of third party criminal conduct may require merchants to secure or even militarize business properties open to the public in high crime areas. *See Leichter v. Eastern Realty Co.*, 358 Pa.Super. 189, 198, 516 A.2d 1247, 1252 n. 2 (1986) (Kelly, J., concurring); *cf. Williams v. Cunningham Drug Stores*, 418 N.W.2d 381 (1988); *Castillo v. Sears Roebuck & Co.*, 663 S.W.2d 60 (Tx.App.1983); *Berdeaux v. City Nat'l Bank*, 424 So.2d 594 (Ala.1982); *Foster v. Winston–Salem Jt. Venture*, 50 N.C.App. 516, 274 S.E.2d 265 (1981); *Cook v. Safeway*, 354 A.2d 507 (D.C.App.1976); *Cornpropst v. Sloan*, 528 S.W.2d 188 (Tn.1975).

We also note that it is far from clear that the duty recognized in *Moran* and *Murphy* may be imposed upon a *non-profit* hospital with regard to criminal assault by third party upon an invitee of a tenant of a nursing residence which was located on a portion of the Hospital grounds *not open to the public.* In *Feld v. Merriam*, 506 Pa. 383, 485 A.2d 742 (1984), our Supreme Court explained:

Tenants in a huge apartment complex, or a tenant on the second floor of a house converted to an apartment, *do not live where the world is invited to come.* Absent agreement, the landlord cannot be expected to protect them against the wiles of felony any more than the society can always protect them upon the common streets and highways leading to their residence or indeed in their home itself. An apartment building *is not a place of public resort where one who profits from the very public it invites must bear what losses that public may create. It is of its nature private and only for those specifically invited.* The criminal can be expected anywhere, any time, and has been a risk of life for a long time. He can be expected in the village, monastery and the castle keep.

485 A.2d at 745–46. (Emphasis added). What was said of the apartment building in *Feld*, could be said as well as of the Hospital's nurses' residence here.

A landlord may, as indicated, incur a duty voluntarily or by specific agreement if to attract or keep tenants he provides a program of security. A program of security is not the usual and normal precautions that a reasonable home owner would employ to protect his property. It is, as in the case before us, an extra precaution, *such as personnel specifically charged to patrol and protect the premises.* Personnel charged with such protection may be expected to perform their duties with the usual reasonable care required under standard tort law for ordinary negligence. When a landlord by agreement or voluntarily offers a program to protect the premises, he must perform the task in a reasonable manner and where a harm follows a reasonable expectation of that harm, he is liable. *The duty is one of reasonable care under the circumstances. It is not the duty of an insurer and a landlord is not liable unless his failure is the proximate cause of the harm.*

485 A.2d at 747. (Emphasis added).

The Hospital was a landlord, and through its agent (the Security Firm) it unquestionably offered a program of security to the tenants of its nurses' residence and their invitees, including Mr. Kerns. *Feld v. Merriam, supra.* As such, the Hospital and the Security Firm had a duty to exercise reasonable care with respect to that program of security. *Id.*

The Kerns argue that the program of security actually implemented was unreasonably *inadequate.* This mistakes the type of reasonable care required with respect to the program of security.

In *Feld v. Merriam, supra,* our Supreme Court further stated:

*A tenant may rely upon a program of protection only within the reasonable expectations of the program.* He cannot expect that a landlord will defeat all the designs of felony. He can expect, however, that the program will be reasonably pursued and not fail due to its negligent exercise. *If a landlord offers protection during certain*

*periods of the day or night a tenant can only expect reasonable protection during the periods offered.* If, however, during the periods offered, the protection fails by a lack of reasonable care, and that lack is the proximate cause of the injury, the landlord can be held liable. *A tenant may not expect more than is offered. If, for instance, one guard is offered, he cannot expect the same quality and type of protection that two guards would have provided, nor may he expect the benefits that a different program might have provided.* He can only expect the benefits reasonably expected of the program *as offered* and that that program will be conducted with reasonable care.

485 A.2d at 747. (Emphasis added). The expert's report, which was directed solely to the perceived *inadequacy* of the program of security offered, is thus inapposite. It addresses a question wholly irrelevant under the standard set forth in *Feld.*

The mere fact that neither the roving guard, nor the guard assigned to watch the alternating closed circuit monitors noticed the 30 second assault in progress, or noticed the assailants in time to prevent the assault, in no way established any negligence on their part with regard to the limited program of security actually offered. Nor was negligence established by the fact that the guard did not come immediately to raise the gate for Mr. Kerns when Mr. Kerns honked his horn. Neither fact demonstrates negligence within the limited parameters of the security program actually in place. Indeed, the expert opinion supplied by the Kerns strongly indicated that the perceived *inadequacy of the program,* rather than any *negligence by the guards* was the "cause" of the guards' failure to prevent the assault. The parties appear to agree that the program of security actually implemented simply was not designed to prevent such sudden assaults.

In sum, there is no evidence in this record to establish a question of material fact as to any alleged negligence by the Security Firm with regard to the program of security

actually offered. Moreover, there is also no evidence in this record demonstrating that any such negligence proximately caused the injury Mr. Kerns suffered. *Cf. Glick v. Olde Town Lancaster,* 369 Pa.Super. 419, 535 A.2d 621 (1987) (examining proximate cause and the liability of a property owner for criminal acts of third parties); *cf. Castillo v. Sears, Roebuck & Co.,* 663 S.W.2d 60 (Tx.App.1983) (neither negligence nor proximate cause was shown with regard to security guards' failure to prevent a criminal assault in mall parking lot); *Cornpropst v. Sloan,* 528 S.W.2d 188 (Tn. 1975) (same).

Consequently, we find no error or abuse of discretion in the trial court's decision to grant summary judgment to the Hospital and the Security Firm. There were no unresolved factual issues framed, which if resolved in the Kerns favor would establish liability on the part of the Hospital or the Security Firm for Mr. Kerns' injuries; hence, summary judgment for the Hospital and the Security Firm was proper on Mr. Kerns' claim. Liability to Mrs. Kerns for loss of consortium was dependent on the validity of her husband's claim, and was likewise properly subject to summary judgment. The third claim, for punitive damages, was not only derivative, it was *wholly frivolous,* and was likewise properly subject to summary judgment.

### Conclusion

Based upon the foregoing, the order granting summary judgment in favor of the Hospital and the Security Firm is Affirmed.