J-A23013-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: ESTATE OF ALFRED E. PLANCE, JR., DECEASED | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: TIMOTHY W. PLANCE | No. 1379 WDA 2014 |

Appeal from the Order July 22, 2014
In the Court of Common Pleas of Beaver County
Orphans' Court at No(s): 04-13-00855

BEFORE: GANTMAN, P.J., LAZARUS, J., and MUSMANNO, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED DECEMBER 08, 2015**

Timothy W. Plance appeals from the order entered in the Court of Common Pleas of Beaver County, Orphans' Court Division, that: (1) declared that Joy Plance possesses superior title to the 146 acre farm known as the Plance Farm ("Farm"); (2) revoked a prior order allowing the probate of a photocopy of a will dated May 24, 2012; and (3) declared that Alfred E. Plance ("Decedent") died intestate. Upon careful review, we reverse and remand for proceedings consistent with the dictates of this memorandum.

Decedent died on March 21, 2013, leaving a wife, Joy Plance ("Joy"), and three children from his first marriage, Timothy Plance ("Timothy"), Christopher Plance ("Christopher") and Steven Plance ("Steven"). In 1990, following his first wife's death, Decedent became the sole owner of the Farm, which is situated partly in Beaver County and partly in Washington County. Decedent married Joy on April 25, 1994, after which time Joy sold her

residence and invested $34,000 of the proceeds, plus $40,000 borrowed from her father, to construct a boarding stable on the Farm. Decedent and Joy operated the stable until approximately 2011 or 2012, when their health failed.

On August 20, 2004, Decedent executed two land trust agreements for the purpose of taking and holding title to the Farm. One trust was to hold the portion of the Farm situated in Beaver County ("Beaver Trust") and the other was to hold the portion located in Washington County ("Washington Trust"). Decedent and Timothy were each named 50% beneficiaries of the trusts. That same day, Decedent executed two deeds with corresponding real estate transfer tax forms, one transferring the Beaver County portion of the Farm to the Beaver Trust and the other transferring the Washington County portion to the Washington Trust. The trust documents and deeds were prepared by and executed in the presence of Lawrence Bolind, Esquire, who also notarized them. The deeds were given to Decedent but never recorded.

On April 26, 2006, Decedent executed two deeds purporting to transfer the Farm to himself and Joy as tenants by the entireties. Decedent executed the deeds as grantor in his individual capacity and not as trustee of the land trust agreements. Both deeds were recorded.

In 2012, Decedent and Joy executed an Oil, Gas and Coalbed Methane Lease with respect to the entire 146 acre Farm in favor of Range Resources-

Appalachia, LLC, and in return received a check in the amount of $439,650.00, payable to Decedent and Joy as owners by the entireties.

In the Spring of 2012, Decedent was hospitalized and, upon his release, Timothy and his wife, Shawna, made an appointment with their attorney, Michael Werner, Esquire, for Decedent to execute a new will and other estate planning documents. Timothy and Shawna accompanied Decedent to meet with Attorney Werner. During the meeting, Decedent showed Attorney Werner copies of the land trust agreements and deeds from 2004, as well as the 2006 deeds from himself to himself and Joy. Decedent also expressed concern regarding the disposition of the check from Range Resources.[1] Attorney Werner, being of the opinion that the 2004 deeds had effectively transferred the Farm to the trusts, advised Decedent to request a stop-payment order on the Range Resources check because Decedent and Joy, the payees named on the check, were not the true owners of the Farm. Attorney Werner also testified that he advised Decedent to record the 2004 deeds, but that doing so would "open up a very large can of worms from which it would be very difficult to turn back." N.T. Trial, 5/19/14, at 42.

---

[1] Attorney Werner testified that Decedent told him the check had been mailed to the residence he shared with Joy during the time he had been hospitalized. Decedent "voiced serious concern about Joy obtaining that check and his inability to access the . . . funds moving forward" due to problems in Decedent's relationship with Joy. N.T. Trial, 5/19/14, at 11.

Attorney Werner prepared a will and other documents for Decedent based upon their discussion and Decedent returned, accompanied by Shawna Plance, to execute the documents on May 24, 2012. The will executed by Decedent included $1,000 bequests to each of his sons and gave the residue to Timothy, with a gift over to Christopher. The will gave nothing to Joy. Decedent named Timothy as his executor. Shawna testified that Decedent gave to her the originals of the executed estate planning documents and she placed them in a plastic file box, which remained in her possession until August 2012.

Following the execution of Decedent's estate planning documents, Attorney Werner received several phone calls from Shawna Plance and Decedent in which they gave him changing instructions as to stopping payment on the Range Resources check and recording the 2004 deeds. Ultimately, on July 9, 2012, Decedent instructed Attorney Werner not to proceed further with the trusts, deeds or stopping payment on the check and requested that Attorney Werner return to him the originals and all copies of all documents in his possession. Attorney Werner did so on that same day.[2]

_____

[2] Attorney Werner testified that, according to the cover letter he sent to Decedent, the following documents were returned to Decedent: (1) an original and one copy of the Beaver County land trust agreement; (2) an original and one copy of the unrecorded 2004 Beaver County deed; (3) a copy of the recorded 2006 Beaver County deed; (4) an original Washington County land trust agreement; (5) an original and one copy of the unrecorded 2004 Washington County deed; (6) a copy of the recorded 2006 Washington
*(Footnote Continued Next Page)*

In early August 2012, Decedent asked Shawna to give him the plastic box containing his estate planning documents. Joy testified that when Decedent returned home with the box, he told her that he, Timothy and Shawna had had a falling out. She further testified that Decedent took the plastic container out to the trash burner and burned its contents.

After Decedent's death in March 2013, the original 2012 will could not be located. Accordingly, Timothy filed a petition to probate a photocopy of the will. Joy did not file a response to the petition. After a hearing which was not transcribed, at which Joy's counsel appeared to object to the prayer of the petition, the Orphans' Court concluded that the will "has been lost and misplaced and that the testator has not destroyed the original with the intention of revocation" and directed that the copy be admitted to probate. Timothy was granted Letters Testamentary on October 2, 2013.

On November 21, 2013, Timothy filed a petition with the Orphans' Court, alleging that Joy had either taken or refused to disclose the location of certain property of the Decedent, including approximately $100,000 in gold coins and a large portion of the proceeds of the Range Resources check. Timothy further claimed that Joy had dissipated certain other assets of the Decedent without his authorization, and that her actions made it impossible for him to secure and/or inventory the Decedent's property. Timothy

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯

County deed; and (7) a copy of the Range Resources lease. N.T. Trial, 5/19/14, at 50-51.

- 5 -

requested, *inter alia*, that Joy be enjoined from alienating property of the estate and be ordered to account for estate property previously dissipated.

In her response to Timothy's petition, Joy denied that she improperly disposed of estate assets and, in new matter, asserted that Decedent had revoked his 2012 will by burning it and, as such, had died intestate. Joy also asserted ownership of the Farm by virtue of the 2006 deed. Joy requested that the 2012 will be declared to have been revoked.

Timothy filed a response to new matter in which he claimed that the issue of the will's destruction had already been litigated and decided by the court in 2013 when it directed the admission of the photocopy to probate, and that Joy's claim was subject to the doctrines of res judicata and collateral estoppel. He also asserted that the Farm was effectively transferred to the land trusts by the 2004 deeds. Therefore, Timothy claimed, the 2006 deed purporting to convey the Farm to Decedent and Joy as tenants by the entireties was void.

The parties engaged in discovery and, on May 19-20, 2014, a trial was held before the Orphans' Court. By memorandum and decree dated July 22, 2014, the court held that Joy Plance "possesses the superior title to the Plance [F]arm;" concluded that the previous order allowing the probate of a photocopy of Decedent's will had been entered improvidently; and declared that Decedent died intestate. Timothy filed a timely notice of appeal on August 19, 2014, followed by a court-ordered statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On October 28,

2014, the Orphans' Court filed its Rule 1925(a) opinion, in which it addressed those issues raised by Timothy in his Rule 1925(b) statement that had not been addressed in the court's prior memorandum.

Timothy raises the following issues for our review:

A. Under Pennsylvania law, does the Decedent's execution and acknowledgement of the 2004 deed transferred from the Decedent as an individual to himself as Trustee constitute delivery of the deed and effectively transfer title to the subject property even if the deed was not recorded?

B. Under Pennsylvania law, does the doctrine of res judicata preclude Joy Plance's claim that the will was revoked when the question of the will's revocation was already addressed and adjudicated in a prior hearing?

C. Under Pennsylvania law, does the doctrine of collateral estoppel prevent [Joy] Plance from asserting a claim that the will was revoked when the question of the will's revocation was already addressed and adjudicated in a prior hearing?

Brief of Appellant, at 4.

We begin by noting our standard of review:

When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion. However, we are not constrained to give the same deference to any resulting legal conclusions. Where the rules of law on which the court relied are palpably wrong or clearly inapplicable, we will reverse the court's decree.

*Estate of Fuller*, 87 A.3d 330, 333 (Pa. Super. 2014), quoting *In re Estate of Hooper*, 80 A.3d 815, 818 (Pa. Super. 2013).

Timothy's first claim is that the Orphans' Court erred by failing to find that there was delivery of the 2004 deeds and that the Farm was effectively transferred to the land trust. Timothy argues that the Decedent's failure to record the deeds is not dispositive, and the fact that Decedent, as grantor, delivered the deeds to himself, as trustee, evidenced his intent to pass title of the Farm to the trust.

The Orphans' Court found as follows:

There is no dispute that the Decedent executed two (2) Trust Agreements and two (2) Deeds that would transfer [the Farm] into those Trusts, with the assistance of Attorney Lawrence Bolind, and that the original documents were then given to Decedent. Decedent retained possession of those documents and had every chance to properly record the Deeds but failed to do so. Subsequently, in 2006, the Decedent executed another Deed that transferred ownership of the [Farm] to himself and [Joy].

Due to these facts, it is clear that the Decedent never intended to transfer the [Farm] into the Trusts. Not only did he not record the documents that were in his possession, but he also acted in direct contradiction to the Trusts' supposed ownership of the land by later transferring it to himself and [Joy]. For that reason, [Joy] has a superior title to the [Farm].

Orphans' Court Opinion, 7/22/14, at 40.

For the following reasons, we conclude that the 2004 deeds effectively transferred the Farm to the land trusts.

Whether there has been delivery of a deed is a factual question to be determined by the chancellor. *Mower v. Mower*, 367 Pa. 325, 80 A.2d 856 (1951); *Abraham v. Mihalich*, 330 Pa.Super. 378, 479 A.2d 601 (1984). If his finding is supported by competent evidence, it is binding on this court. *Abraham v. Mihalich*, *supra*; *see also District Council 33 v. City of Philadelphia*, 354 Pa.Super. 176, 511 A.2d 818 (1986).

- 8 -

> Further, we accept his resolution of conflicts in testimony as well as his assessment of the credibility of witnesses. *In re Kerwin's Estate*, 371 Pa. 147, 89 A.2d 332 (1952); *Abraham v. Mihalich*, *supra*.

*In re Estate of Darlington*, 527 A.2d 159, 160 (Pa. Super. 1987).

The recording of a deed raises the presumption of the deed's validity. *Stiegelmann v. Ackman*, 41 A.2d 679, 681 (Pa. 1945). However, recording is not essential to establish the validity of a deed; title to real estate may be passed by delivery of the deed to the grantee without recording it. *Sovereign Bank v. Harper*, 674 A.2d 1085, 1092 (Pa. Super. 1996) (citation omitted). "[N]o particular form or ceremony is necessary to effect delivery; it is sufficient if the grantor evidences his intention in any manner to put the document into the ownership of the other party and thereby to relinquish all control of it thereafter." *City Stores Co. v. Philadelphia*, 103 A.2d 664, 666 (Pa. 1954). "The delivery may be inferred from the circumstances; it may be accomplished by words alone, by acts, or by both, and it is not necessary that actual manual investiture be proved." *Id.* at 666-67. "It is the general rule that there is a presumption, [in] the absence of proof to the contrary, that a deed was executed and delivered on the day it was acknowledged[.]" *Herr v. Bard*, 50 A.2d 280, 281-82 (Pa. 1947) (citation omitted). However, the presumption arising from "signing, sealing and acknowledging a deed is delivered, accompanied by manual possession by the grantee, . . . is not irrebuttable[.]" *Cragin's Estate*, 117 A. 445, 446 (Pa. 1922). The "presumption may be overcome by evidence that no delivery was in fact intended, and none made." *Id.*

Joy argues that no delivery occurred. However, in the cases she cites in support of this position, the grantor and grantee were different individuals. Conversely, here, grantor and grantee were the same individual, the Decedent, acting in two different capacities. Accordingly, indicia of delivery such as "relinquishment of control," *see Abraham*, *supra*, or delivery to a third party with instructions to pass on to the grantee, *see Fiore v. Fiore*, 174 A.2d 858 (Pa. 1961), are not relevant to our analysis. Joy also cites *Clauer v. Clauer*, 22 Pa. Super. 395 (1903), for the proposition that "[w]here a Grantor retains possession of a Deed during his lifetime and does not record it there is no delivery." Brief of Appellee, at 11. However, there, again, the grantor and grantee were separate individuals and, thus, *Clauer* is distinguishable on its facts.

The trial court placed great weight on the fact that Decedent did not record the deeds. *See* Trial Court Opinion, 7/22/14, at 40 ("Decedent retained possession of [the deeds and trusts] and had every chance to properly record the Deeds but failed to do so."). However, as noted above, the failure to record the deeds is not dispositive. Decedent, as grantor, executed, acknowledged and delivered the deeds to himself, as trustee/grantee of two trusts he executed that same day. This was sufficient to pass title to the trusts. *Harper*, *supra*. Joy presented no evidence to rebut the presumption that, at the time Decedent executed and acknowledged the deeds and delivered them to himself as trustee, he intended to transfer ownership of the Farm to the trusts. Accordingly, the

Orphans' Court erred in finding that title to the Farm did not vest in the trusts by virtue of the 2004 deeds.

Joy also argues that, even if delivery occurred, she is a subsequent bona fide purchaser for value by virtue of the 2006 deeds and, thus, she possesses superior title to the Farm. In support of this claim, she cites to 21 P.S. §§ 351 and 444, which provide as follows:

§ 351. Failure to record conveyance

All deeds, conveyances, contracts, and other instruments of writing wherein it shall be the intention of the parties executing the same to grant, bargain, sell, and convey any lands, tenements, or hereditaments situate in this Commonwealth, upon being acknowledged by the parties executing the same or proved in the manner provided by the laws of this Commonwealth, shall be recorded in the office for the recording of deeds in the county where such lands, tenements, and hereditaments are situate. Every such deed, conveyance, contract, or other instrument of writing which shall not be acknowledged or proved and recorded, as aforesaid, shall be adjudged fraudulent and void as to any subsequent bona fide purchaser or mortgagee or holder of any judgment, duly entered in the prothonotary's office of the county in which the lands, tenements, or hereditaments are situate, without actual or constructive notice unless such deed, conveyance, contract, or instrument of writing shall be recorded, as aforesaid, before the recording of the deed or conveyance or the entry of the judgment under which such subsequent purchaser, mortgagee, or judgment creditor shall claim. Nothing contained in this act shall be construed to repeal or modify any law providing for the lien of purchase money mortgages.

21 P.S. § 351.

§ 444. All deeds made in the state to be acknowledged and recorded within ninety days

All deeds and conveyances, which, from and after the passage of this act, shall be made and executed within this commonwealth

- 11 -

of or concerning any lands, tenements or hereditaments in this commonwealth, or whereby the title to the same may be in any way affected in law or equity, shall be acknowledged by the grantor . . . and shall be recorded in the office for the recording of deeds where such lands, tenements or hereditaments are lying and being, within ninety days after the execution of such deeds or conveyance, and every such deed and conveyance that shall at any time after the passage of this act be made and executed in this commonwealth, and which shall not be proved and recorded as aforesaid, shall be adjudged fraudulent and void against any subsequent purchaser or mortgagee for a valid consideration[.]

21 P.S. § 444. Joy asserts that her "valid consideration" was the investment of "substantial sums of her own funds into the development and operation of the Farm where she worked side-by-side with her husband for nineteen years." Brief of Appellee, at 13. Citing **Ludwig Rys v. Weronika Rys**, 99 Pa. Super. 339 (1930), Joy also asserts that "natural love and affection between spouses is considered valid consideration in the marriage or family context." **Id.** For the following reasons, Joy's argument fails.

A grantee of land is a bona fide purchaser if, at the time of sale, he was: (1) without notice of an adverse interest and (2) gave value for the purchase of the land. **Roberts v. Estate of Pursley**, 718 A.2d 837, 841 (Pa. Super. 1998). Here, although Joy may years ago have invested her own funds into the improvement of the Farm, she has failed to demonstrate that she paid valid consideration at the time the deeds were actually executed, such that she could be considered a bona fide purchaser for value.

The deeds themselves recite only nominal consideration in the amount of one dollar.[3]  Nor has Joy either argued or demonstrated that Decedent agreed to accept her prior investment in the property as past consideration for the conveyance.  Rather, it appears that Decedent simply attempted to make a gift of an undivided one-half interest the property to Joy.

Moreover, Joy's reliance on **Rys** is inapt.  **Rys** concerned a husband's claim that his wife fraudulently induced him to title property in their joint names, despite the fact that the consideration paid for the property consisted solely of husband's funds.  The question at issue in the current matter, whether the wife was a bona fide purchaser for value, did not arise in **Rys** and thus, the case is inapplicable here.

For the foregoing reasons, we conclude that:  (1) the 2004 deeds effectively passed title to the Farm to the trusts and (2) Joy is not a bona fide purchaser for value and does not possess superior title to the Farm.

_____

3

> The expression of a nominal consideration in a deed is resorted to by conveyancers to avoid the inconvenience of setting forth the real consideration when that is difficult to set forth briefly, or of a private nature, and to comply with a usage that arose because a deed of bargain and sale, under the statute of uses, originally operated merely to create a resulting trust for the grantor, unless supported by a valuable consideration, which, it was formerly held, must be a pecuniary one.  It is well known that the nominal consideration of one dollar is regarded by all as having served its purpose by its mere mention in the instrument and that it almost never changes hands[.]

**Dohan v. Yearicks**, 98 A. 611, 611 (Pa. 1916)

Timothy's final two issues will be addressed together. These claims assert that the Orphans' Court erred by considering – and ultimately agreeing with – Joy's claim that Decedent destroyed his will by burning it and, thus, the duplicate will admitted to probate was revoked and Decedent actually died intestate. Timothy asserts that the questions of revocation was adjudicated in a prior proceeding and, thus, the doctrines of res judicata and collateral estoppel barred the court from revisiting the issues.

Under the doctrine of res judicata, a party is barred from litigating claims that were or could have been raised in a prior action which resulted in a final judgment on the merits, so long as the claims derive from the same cause of action. **Balent v. City of Wilkes-Barre**, 669 A.2d 309, 315 (Pa. 1955). Res judicata applies when, in two actions, there is: (1) an identity in the thing sued upon (2) identity in the cause of action (3) identity of persons and parties to the action, and (4) identity of the capacity of the parties suing or sued. **In re Jones & Laughlin Steel Corp.**, 477 A.2d 527, 530-31 (Pa. Super. 1984) (citation omitted). "The essential inquiry (in determining whether res judicata is applicable) is whether the ultimate and controlling issues have been decided in a prior proceeding in which the parties had an opportunity to appear and assert their rights." **In re Estate of Velott**, 529 A.2d 525, 528 (Pa. Super. 1987) (citation omitted). The purposes behind the doctrine are to conserve limited judicial resources, establish certainty and respect for court judgments, and protect the party relying upon the judgment from vexatious judgment. **Radakovich v. Radakovich**, 846 A.2d

709, 715 (Pa. Super. 2004). In keeping with these purposes, the doctrine must be liberally construed and applied without technical restriction. *Id.*

Here, the prior action was Timothy Plance's petition to admit a photocopy[4] of the Decedent's May 21, 2012 will. At issue in this action was whether the will was revoked or destroyed by the testator. As here, "where a [testator] retains the custody and possession of [his] will and, after [his] death, the will cannot be found, a presumption arises, in the absence of proof to the contrary, that the will was revoked or destroyed by the [testator]." *In re Estate of Janosky*, 827 A.2d 512, 519 (Pa. Super. 2003) (citation omitted). Thus, Timothy bore the burden of rebutting the presumption that Decedent had revoked the 2012 will.

Timothy served his petition upon Joy's counsel on August 14, 2013, in anticipation of presenting it at the August 27, 2013 motions hearing. Joy filed no responsive pleading to Timothy's petition, but was represented by counsel at the hearing. No notes of testimony from the motions hearing exist. However, at the conclusion of the hearing, the court issued an order finding that the Decedent had not "destroyed the original [will] with the

---

[4] In order to probate a copy of a lost will, the proponent of the copy must prove that: (1) the testator duly and properly executed the original will; (2) the contents of the will were substantially as appears on the copy of the will presented for probate; and (3) when the testator died, the will remained undestroyed or revoked by him. *Burns v. Kabboul*, 595 A.2d 1153, 1167-68 (Pa. Super. 1991) (citation omitted). Here, the only question at issue was whether the Decedent had revoked his will prior to his death.

intention of revocation." Orphans' Court Order, 8/27/13. Joy did not appeal and, thus, it became a final order.

Subsequently, after letters testamentary had been granted to Timothy on the 2012 will, Joy again raised the issue of revocation in her new matter to Timothy's petition for relief. Joy claimed that Decedent had revoked the will by burning it. In his response to new matter, Timothy raised the doctrines of res judicata and collateral estoppel, claiming the issue had already been decided by order dated August 27, 2013, admitting a photocopy of the will to probate.

The four identities of res judicata are present in this matter. The thing sued upon and cause of action in both actions – i.e., whether or not Decedent had revoked his 2012 will – were the same. The parties were identical, as were their capacities. In the prior action, Joy could have litigated whether Timothy rebutted the presumption that Decedent revoked his will, but failed to file a response to his petition. She had a further opportunity to raise the issue in motions court, where she was represented by counsel. Moreover, once the court entered its order finding that Decedent had not revoked the will, Joy declined to file an appeal. Accordingly, there was a final judgment entered on the merits by a court of competent jurisdiction and Joy was barred by the doctrine of res judicata from relitigating the same cause of action in a subsequent suit. As such, the Orphans' Court erred in addressing the question of revocation a second time.

Similarly, Joy's claim is also barred by the doctrine of collateral estoppel. Collateral estoppel, which is closely related to res judicata, bars the re-litigation of issues where:

> (1) the issue decided in the prior case is identical to one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding and (5) the determination in the prior proceeding was essential to the judgment.

**Radakovich**, 846 A.2d at 715.

As stated above, the same issue was before the court in both actions, i.e., whether Decedent had revoked his 2012 will. In both cases, the parties were identical and each had a full and fair opportunity to litigate the issue. Finally, the court issued a final judgment on the merits in the first action, and the determination as to the issue of revocation was essential to that judgment. Joy did not appeal that ruling. Thus, the court erred in revisiting the issue.

Order reversed. Case remanded for proceedings consistent with the dictates of this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/8/2015