J-A22019-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ALEXANDER MALOFIY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MEDIA REAL ESTATE COMPANY | : | No. 12 EDA 2018 |

Appeal from the Order Dated November 1, 2017
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 170300759

BEFORE: BENDER, P.J.E., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY NICHOLS, J.: **FILED FEBRUARY 14, 2019**

Appellant Alexander Malofiy appeals from the order sustaining, in part, Appellee Media Real Estate Company's preliminary objections to venue and transferring this matter from Philadelphia to Delaware County.[1] Appellant claims that the trial court erred in failing to compel disclosure of Appellee's Philadelphia taxes and in transferring venue to Delaware County. We affirm.

The trial court set forth the background of this matter as follows:

This case arises out of a slip-and-fall incident that occurred in Media, Delaware County, Pennsylvania. According to the

---

[*] Former Justice specially assigned to the Superior Court.

[1] *See* Pa.R.A.P. 311(c) ("An appeal may be taken as of right from an order in a civil action or proceeding changing venue, transferring the matter to another court of coordinate jurisdiction, or declining to proceed in the matter on the basis of *forum non conveniens* or analogous principles.").

Complaint, [Appellant] Alexander M[a]lofiy rented an accounting office in a building owned by [Appellee] Media Real Estate Company, a Pennsylvania [limited[2]] partnership. On March 9, 2015, [Appellant] slipped on black ice as he was exiting the building, sustaining injuries.

On March 9, 2017, [Appellant] instituted this action in Philadelphia County by writ of summons. [Appellant] filed a Complaint on July 10, 2017. Paragraph 50 of the Complaint averred that "[v]enue is proper in the Philadelphia County Court of Common Pleas under Pennsylvania Rules of Civil Procedure 2130, 2179, and 1006 inasmuch, on information and belief, [Appellee] is an entity that regularly conducts business in Philadelphia."

[Appellee] filed preliminary objections as to improper venue, *inter alia*, on July 31, 2017, requesting a transfer to Delaware County. An oral argument and evidentiary hearing was held on October 25, 2017.

[Appellee] argued it had no residence, place of business, or registered office in Philadelphia, and no employees or agents did business in Philadelphia. As evidence, [Appellee] offered a July 31, 2017 affidavit of [Strine], general partner of [Appellee], which affirmed the same.

In response, [Appellant] contended [that Appellee] did regularly conduct business in Philadelphia. As proof, [Appellant] offered screenshots of [Appellee]'s website, mediarealestate.com/featured-shortterm-listings.asp. The website included multiple rental listings for properties located within Philadelphia County.

Trial Ct. Op., 3/19/18, at 1-2.

On August 28, 2017, the trial court issued a rule to show cause as to why Appellee's preliminary objections should be granted on the issue of venue.

---

[2] ***See*** Appellee's Preliminary Objections, 7/31/17, at ¶ 3; Aff. of Walter M. Strine, Jr. (Strine), 7/31/17, at ¶ 2.

Order, 8/28/17.  The order further scheduled an evidentiary hearing,
providing, in relevant part:

> An argument and evidentiary proceeding, limited solely to
> the issue of venue, is scheduled for October 25, 2017 . . . .
>
> **The [c]ourt will accept affidavits or deposition
> evidence and upon application for good cause shown,
> live testimony, relevant to the issue of venue.**  All
> affidavits must be submitted to opposing counsel no later
> than thirty (30) days from the docketing of this Order.  If
> the party receiving an affidavit wishes to depose the affiant
> on venue related issues, said deposition must occur between
> the date the affidavit is produced and the hearing date.
> Nothing in this Rule shall prevent the parties from taking
> venue-related depositions prior to the production of an
> affidavit.

*Id.* (emphasis added).

On September 21, 2017, Appellant filed a motion for sanctions claiming
that Appellee failed to withdraw false statements in its preliminary objection
to venue and Strine's supporting affidavit.  Specifically, Appellant asserted
that Appellee's denial that it regularly conducted business in Philadelphia was
contradicted by its listings of rental properties in Philadelphia on its website.

On October 12, 2017, Appellee filed an answer to Appellant's motion for
sanctions denying that it conducted adequate business in Philadelphia to
establish venue.  Appellee asserted that the motion for sanctions was
premature in light of its attempts to depose Jeffrey Cadorette (Cadorette),
Appellee's executive vice president, as a fact witness on venue.  ***See***
Appellee's Mem. of Law in Support of its Answer to Appellant's Mot. for
Sanctions, 10/12/17, at 2.  Appellee indicated that it previously attempted to

- 3 -

schedule a deposition of Cadorette by a letter dated September 21, 2017, and issued its notice to depose Cadorette on September 28, 2017. According to Appellee, Appellant failed to respond to its requests to depose Cadorette. Appellee's Answer to Appellant's Mot. for Sanctions, 10/12/17, at ¶ 31.

On October 12, 2017, the parties deposed Cadorette, and the trial court summarized Cadorette's testimony as follows;

> [Cadorette] explained that some of the listings on the websites are listed as part of a partnership agreement with another real estate company[, Regus]. The agreement allowed the other company to place ads for short-term furnished rentals on [Appellee]'s website in exchange for a ten percent commission. [Appellee] acted solely as a referral source and was otherwise not in the business of short-term furnished leasing.
>
> . . . Mr. Cadorette testified there was one sale of a warehouse property in Philadelphia in 2014 that netted a commission of $42,000, split evenly between Mr. Cadorette and [Appellee]. The commission was the only revenue generated by [Appellee] arising from business in Philadelphia since 2014. [Appellee] has not earned a commission on any other Philadelphia listing on the website.

Trial Ct. Op., 3/19/18, at 2. Cadorette identified Amanda Iacavino as a contact at Regus. Cadorette Dep., 10/12/17, at 105. He also identified Appellee's tax accountant as Wipfli. *Id.* at 41.

On October 17, 2017, Appellant issued an amended notice to depose Strine, which included a request for Appellee's Philadelphia taxes from 2012 to 2017.[3] Two days later, on October 19, 2017, Appellant deposed Strine.

_____

[3] The record does not establish when Appellant issued his original notice to depose Strine.

*See* Strine Dep., 10/19/17. During Strine's deposition, Appellee's counsel objected to

> the production of any federal, state, and non-Philadelphia County local tax returns, as they may be in an unredacted fashion, used to calculate and contemplate [Appellee]'s net worth in violation of the discovery rules requiring such production until leave of Court is granted.

*Id.* at 101. Strine identified Appellee's tax accountant at Wipfli as Kelly Fisher (Fisher). Strine did not produce Appellee' Philadelphia tax returns based on Strine's testimony that Appellee did not conduct business in Philadelphia and did not file Philadelphia tax returns. *See id.* at 101-02.

On October 20, 2017, Appellant filed an application for the live testimony of Regus's general manager Iacavino and Appellee's accountant Fisher. *See* Appellant's Appl. for Live Testimony, 10/20/17. Appellant's subpoena to Fisher requested that she appear at the courthouse on October 25, 2017, the day the evidentiary hearing was scheduled. *Id.* at Ex. 4. The subpoena also requested that she provide Appellee's Philadelphia tax returns from 2012 to 2017. *Id.*

At the evidentiary hearing, on October 25, 2017, the following relevant exchange occurred:

> [Fisher's Counsel]: Good morning, Your Honor, Jason Sweet on behalf of Kelly Fisher. She was a subpoenaed witness for this matter. We filed a motion to quash yesterday. It hasn't been docketed yet.
>
> THE COURT: My written permission permitting you to present live testimony?

- 5 -

[Appellant's Counsel]:  You did not rule on that yet, Your Honor, and it might be resolved, because I think there's ample evidence that we've established through deposition testimony.

THE COURT:  So if it's resolved, can we send [Fisher] home?

[Appellant's Counsel]:  It might be resolved pending the hearing today without further live testimony.

THE COURT:  No.

[Appellant's Counsel]:  Okay.

THE COURT:  No.  There is a reason I don't permit live testimony.  Turn around and look at this courtroom.

[Appellant's Counsel]:  Yes, Your Honor.

＊ ＊ ＊

THE COURT:  All 60 [attorneys] wish to present live testimony.  It is why I permit only deposition testimony.

[Appellant's Counsel]:  I understand, Your Honor.  It was in the order for application.

THE COURT:  So start off by telling me what made this one special . . . that you could not depose or move the deposition.

[Appellant's Counsel]:  Well, we did depose both Mr. Walter Strine, Jr., as well as one of the two general partners of Media Real Estate, as well as the senior or the executive vice-president of Media Real Estate.  We do have those depositions, and we do have them to hand up to Your Honor.  The issue at the deposition was the general partner who was responsible for taxes said he did absolutely no investigation whatsoever, did not ask his accountant whether or not there was any business done in Philadelphia, did no investigation or ask the person who aggregates and compiles the business records.

THE COURT:  So why don't we have the deposition of anybody else that you may have wished to [depose] as opposed to bringing somebody in live, which again . . . I was very specific in my order stating not permitted without my permission?

[Appellant's Counsel]:  Right, Your Honor.  And the reason is that we presume[d] that the general partner, one of two general partners would have his actual Philadelphia tax returns when he

- 6 -

did actually receive income in Philadelphia. Those records were indicated by opposing counsel to be produced, but then he said he didn't want to reveal the net worth. We're not interested in net worth. We're interested in income, which is different than net worth. So they say they have the records or they say there are records, but they're not going to produce them. We asked the general partner for those records who is in charge of that. He doesn't produce them. We have a notice of deposition, amended notice. We ask for business records relating to income, business income receipts tax, net profits tax, BPT tax, things that are standard in any business. We've established that there was sales in Philadelphia of about $700,000 mere months away. We established that there's multiple listings in Philadelphia for leased property in Philadelphia. We established that there's ongoing contracts for commissions in Philadelphia properties. We established they received $42,000 in commissions. Yet they put an affidavit together saying they did no business whatsoever.

THE COURT: Okay.

[Appellant's Counsel]: So that's why we deposed Mr. Walter Strine, believing we were going to get all these documents, and opposing counsel represented that he doesn't see there would be an issue producing them, but then at the deposition, he qualified that, saying there's an objection, "We're producing nothing, because we don't want to reveal the net worth of the business." I would like to get the Philadelphia taxes, the income in Philadelphia, the revenues from Philadelphia, and so at that point, we had to subpoena the accountant who said he's his accountant for 50 years.

THE COURT: Got you. [Fisher] is excused.

*See* N.T., 10/25/17, at 4-8. The trial court denied Appellant's application for live testimony. *Id.* a 4.

On November 1, 2017, the trial court sustained Appellee's preliminary objection as to venue. The trial court transferred the case to the Delaware County Court of Common Pleas without deciding the remainder of Appellee's preliminary objections.

- 7 -

Appellant filed a timely notice of appeal[4] and a court-ordered Pa.R.A.P. 1925(b) statement. The trial court filed a Pa.R.A.P. 1925(a) opinion suggesting that Appellant failed to demonstrate that Appellee regularly conducted business in Philadelphia. *Id.* at 4. The court, however, did not address Appellant's further assertion that the court erred by failing to compel Appellee's production of tax documents.

Appellant raises two issues on appeal, which we have reordered as follows:

1. Whether the [trial c]ourt committed reversible error when it failed to compel [Appellee] to produce discovery related to its Philadelphia income, including its tax filings[.]

* * *

2. Whether [Appellee] does regular and continuous business in Philadelphia that allows suit in Philadelphia forum and was it reversible error for the [trial] court to transfer venue to Delaware County[.]

* * *

Appellant's Brief at 6-7 (some capitalization omitted).

In his first issue, Appellant argues that the trial court erred in failing to compel disclosure of Appellee's Philadelphia tax returns from 2012 to 2017.

---

[4] Appellant filed a notice of appeal on December 6, 2017. However, the docket indicated that notice of the order was not issued until November 6, 2017. Therefore, Appellant's notice of appeal was timely. *See* Pa.R.A.P. 108(b); Pa.R.C.P. 236; *see also In re L.M.*, 923 A.2d 505, 509 (Pa. Super. 2007) (stating that "an order is not appealable until it is entered on the docket **with the required notation that appropriate notice has been given**" (emphasis in original) (citing *Frazier v. City of Philadelphia*, 735 A.2d 113, 115 (Pa. 1999)).

*Id.* at 27. Appellant maintains that he served document requests on Strine, Appellee's general partner, who agreed to produce the Philadelphia tax returns at his deposition. *Id.* at 23. Appellant continues that Strine reneged and refused to produce the documents. *Id.*

In sum, Appellant contends that Appellee's failure to produce the tax records is proof that said records are damaging to Appellee's position. *Id.* According to Appellant, Appellant asked the trial court to compel Appellee to produce its Philadelphia tax returns and commissions due to Appellee's failure to answer questions or produce the requested documents. *Id.* at 27. Appellant maintains that the court's failure to order Appellee to produce its tax returns constitutes reversible error. *Id.* According to Appellant, "[i]f these tax returns showed income in Philadelphia, then that would prove beyond any doubt regular and continuous business in Philadelphia sufficient to establish venue." *Id.* at 22.

Appellee counters that Appellant "failed to properly preserve and raise his objection to any alleged failure by [Appellee] to produce local Philadelphia tax returns it may have filed." Appellee's Brief at 15. Appellee argues that after the trial court scheduled an evidentiary hearing on the issue of venue, Appellant conducted extensive depositions of Strine and Cadorette. *Id.* at 16. Appellant's notice of deposition to Strine included a request to produce Appellee's Philadelphia tax returns. *Id.* At Strine's deposition, however, Appellee objected to the production of the tax returns "as discovery of unredacted tax returns could be used to calculate [Appellee]'s wealth in

violation of Pa.R.C.P. 4003.7."[5] *Id.* Appellee continues that Appellant did not seek to depose, or serve a subpoena *duces tecum*, on Fisher, Appellee's accountant. *Id.* at 16. Rather, prior to the evidentiary hearing, Appellant filed an application to present the live testimony of Fisher, which the court denied. *Id.* at 17. Therefore, Appellee contends, Appellant should not be able to pursue his discovery issue because he never filed a motion to compel discovery. *Id.*

We review a trial court's determination regarding discovery requests for an abuse of discretion. *PECO Energy Co. v. Ins. Co. of N. Am.*, 852 A.2d 1230, 1233 (Pa. Super. 2004); *Kerns v. Methodist Hosp.*, 574 A.2d 1068, 1073 (Pa. Super. 1990). "The trial court is responsible for [overseeing] discovery between the parties and therefore it is within that court's discretion to determine the appropriate measure necessary to insure adequate and prompt discovering of matters allowed by the Rules of Civil Procedure." *PECO Energy Co.*, 852 A.2d at 1233 (citation and quotation marks omitted).

Instantly, the order scheduling an evidentiary hearing allowed for sufficient time to take depositions regarding the issue of venue. *See* Order, 8/28/17. Rather than deposing Fisher prior to the date of the hearing, Appellant sought to present her live testimony at the evidentiary hearing. *See*

---

[5] Pennsylvania Rule of Civil Procedure 4003.7 provides that "[a] party may obtain information concerning the wealth of a defendant in a claim for punitive damages only upon order of court setting forth appropriate restrictions as to the time of the discovery, the scope of the discovery, and the dissemination of the material discovered." Pa.R.C.P. 4003.7.

Appellant's Appl. for Live Testimony, 10/20/17, at Ex. 4. The trial court did not find that Appellant had good cause to present the live testimony of Fisher as required in its August 28, 2017 order. *See* N.T., 10/25/17, at 4-8. Moreover, because Appellant did not file a motion to compel the production of documents, namely, any Philadelphia tax returns that Appellee might have filed from 2012 to 2017, the court did not abuse its discretion in failing to order that Appellee produce such documents.[6] Accordingly, we conclude the court did not abuse its discretion in denying Appellant's application. *See* *PECO Energy Co.*, 852 A.2d at 1233.

Next, Appellant contends that the trial court erred in transferring venue to Delaware County because Appellee did "regular and continuing business in Philadelphia." Appellant's Brief at 13-14. Appellant provides a list of reasons that he claims demonstrate that Appellee conducts regular and continuous business in Philadelphia:

1. [Appellee] brokered the sale of a commercial/industrial Philadelphia property in 2014 for $700,000 and received a 6% commission ($42,000),

2. [Appellee] has active contracts with the real estate company Regus for the lease of Philadelphia office space under which [Appellee] receives commissions for customers it refers to Regus,

---

[6] We acknowledge that Appellant apparently learned about Fisher and the purported refusal to produce the requested documents a few days before the scheduled hearing. Appellant, however, has not explained why he could not have sought Appellee's financial information, deposed Strine, or moved to reschedule the hearing pending the disposition of any motion to compel in a timely fashion.

3. [Appellee] lists the same Philadelphia office space on its website for the purpose of targeting customers in Philadelphia and earning money in the city, and

4. Regus and [Appellee] have referred each other customers and have an ongoing mutually beneficial business partnership.

*Id.* at 15 (record citations omitted). Appellant claims that these contacts are "central and not tangential to [Appellee]'s purpose," which is to sell and lease real estate. *Id.* at 19. Therefore, Appellant maintains these contacts are sufficient to establish venue in Philadelphia. *Id.*

This Court has set forth our standard of review as follows:

It is well established that a trial court's decision to transfer venue will not be disturbed absent an abuse of discretion. A [p]laintiff's choice of forum is to be given great weight, and the burden is on the party challenging the choice to show it was improper. However, a plaintiff's choice of venue is not absolute or unassailable. Indeed, if there exists any proper basis for the trial court's decision to grant a petition to transfer venue, the decision must stand.

*Wimble v. Parx Casino and Greenwood Gaming & Entm't, Inc.*, 40 A.3d 174, 177 (Pa. Super. 2012) (citation omitted).

Rule 2130 of the Pennsylvania Rules of Civil Procedure provides that

an action against a partnership may be brought in and only in a county **where the partnership regularly conducts business**, or in the county where the cause of action arose or in a county where a transaction or occurrence took place out of which the cause of actions arose or in the county where the property or a part of the property which is the subject matter of the action is located provided that equitable relief is sought with respect to the property.

Pa.R.C.P. 2130(a) (emphasis added).

"In determining whether a corporation or partnership regularly conducts business in a county, we employ a quality-quantity analysis." ***Zampana-Barry v. Donaghue***, 921 A.2d 500 (Pa. Super. 2007). We explained the quality-quantity analysis test as follows:

> A business entity must perform acts in a county of sufficient quality and quantity before venue in that county will be established. ***Purcell***[***v. Bryn Mawr Hosp.***, 579 A.2d 1282, 1284 (Pa. 1990)]. Quality of acts will be found if an entity performs acts in a county that directly further or are essential to the entity's business objective; incidental acts in the county are not sufficient to meet the quality aspect of the test. ***Id.*** Acts that aid a main purpose are collateral and incidental while those necessary to an entity's existence are direct. ***Id.*** (incidental acts include advertising, solicitation of business from a county, education programs for personnel in county, hiring of personnel from the county, and purchase of supplies from county); ***see also Krosnowski v. Ward***, 836 A.2d 143, 147 (Pa. Super. 2003) (*en banc*) (business referrals to and from an independently operated business entity in another county do not establish venue in that county as referrals were in aid of main business purpose and not actual conduct of business in that county). Quantity of acts means those that are sufficiently continuous so as to be considered habitual. ***Purcell***, ***supra***. Each case must be based upon its own individual facts. ***Id.***

***Id.*** at 503-04.

Instantly, the trial court found that venue was improper in Philadelphia, as Appellee did not regularly conduct business within Philadelphia County. ***See*** Trial Ct. Op. at 4. The court reasoned:

> [Appellee] met its burden of proving it does not regularly conduct business in Philadelphia. [Appellee]'s connection with Philadelphia was neither qualitatively nor quantitatively sufficient to show that they regularly conducted business in Philadelphia.
>
> In terms of quantity, [Appellee]'s only income from Philadelphia business was the commission on the 2014 sale, and that

- 13 -

commission was split between [Appellee] and Mr. Cadorette. A single commission is hardly "habitual," especially one which occurred one year prior to the incident and three years prior to the filing of the instant lawsuit.

Regarding quality, even though [Appellee] listed Philadelphia properties on its website, the fact that [Appellee] has not actually earned any revenue from its short-term lease listings is proof the postings were not essential to [Appellee]'s business objective but merely incidental. The mere fact a business website solicits in a particular county does not necessarily mean that venue is proper therein. *See Kubik v. Route 252, Inc.*, 762 A.2d 1119, 1126 (Pa. Super. Ct. 2000) (holding that a business website that provided driving directions from Philadelphia, sent out a newsletter to solicit business, and sold gift certificates did not constitute regularly conducting business in Philadelphia); *Shambe*[ *v. Delaware and Hudson Railroad Co.*, 135 A. 755, 758 (Pa. 1927)] (holding solicitation on its own is not the same as "doing business").

*Id.* at 3-4.

Following our review, we see no basis to disturb the court's sound reasoning. *See Purcell*, 579 A.2d at 1284; *Zampana-Barry*, 921 A.2d at 503-04; *Krosnowski*, 836 A.2d at 147. We agree with and adopt the trial court's conclusion that Appellee was not "regularly conducting business" in Philadelphia. *See* Trial Ct. Op. at 3-4. Accordingly, Appellant's claim that the court abused its discretion in concluding that venue should be transferred to Delaware County warrants no relief. *See Wimble*, 40 A.3d at 177.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/14/19