J-A21038-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ZHAOJIN DAVID KE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ALLSTATE FIRE & CASUALTY | : | No. 1165 EDA 2020 |
| INSURANCE COMPANY, JOHN | : | |
| WELCH, AND STEVEN SCHIMPF | : | |

Appeal from the Order Entered February 25, 2020
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  No. 170300393

BEFORE:   KUNSELMAN, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:            **FILED OCTOBER 5, 2021**

Appellant Zhaojin David Ke appeals *pro se* from the Order entered in the Court of Common Pleas of Philadelphia County on February 25, 2020, denying his motion for summary judgment and granting the motion for summary judgment of appellees Allstate Fire & Casualty Ins. Co. and John Welch and Steven Schimpf, Allstate's insurance adjustors (collectively "Allstate"). Following a careful review, we quash this appeal.

The trial court, the Honorable Judge Shelley Robins New, set forth the facts and procedural history herein as follows:

> On July 3, 2010, Allstate issued to [Appellant] and his then-wife an automobile insurance policy providing comprehensive and collision coverage on their cars.[2]  On June 4, 2016, six years later,

_____

[*] Former Justice specially assigned to the Superior Court.

Allstate served on [Appellant] a notice of non-renewal, citing [Appellant's] claims history as justification for its decision. On March 8, 2017, [Appellant] initiated this lawsuit, alleging that his policy nonrenewal gives rise to various claims: Breach of Contract; Fraudulent Nondisclosure and Representation; Statutory Bad Faith 42 Pa. Stat. and Cons. Stat. Ann. § 8371 (West); Violation of Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 PS 201-2(4)(iv); and Violation of Pa UTPCPL, 201-2(4)(xiv) and (201-2(4)(xxi). He filed a third amended complaint on January 3, 2019.[3]

On January 21, 2020, both [Appellant] and Allstate filed the summary judgment motions that are the subject of this appeal. On February 27, 2020, the [c]ourt denied [Appellant's] motion and granted Allstate's, dismissing all of [Appellant's] claims against [Allstate].

Allstate's stated reasons for its non-renewal was a history of three claims that [Appellant] made over the term of the policy. Allstate paid to [Appellant] $19,268 in collision benefits on a claim arising from an accident [Appellant's] wife had on December 7, 2013 (2013 Claim). In July of 2014, Allstate paid [Appellant] $2,140, less a $500 deductible on a claim reported as a comprehensive claim, but that an adjuster determined was a collision (2014 Claim). Finally, [Appellant] filed an accident claim in 2015; Allstate paid $2,706.86, less deductible; an adjuster determined that the accident involved a collision (2015 Claim). On the three claims aggregated, Allstate paid over $20,000 on [Appellant's] behalf. *Notice of Nonrenewal;* Dft Exh 6; Plf. Exh. 69

[Appellant] accepted Allstate's payments on all his claims of damage to his vehicles. He paid collision deductibles on all three claims. [Appellant] regularly paid all the premiums he was billed.

---

[2] Policy No. 928824522.
[3] Ke previously filed a complaint with the Pennsylvania Department of Insurance. It was rejected as untimely. *Adjudication and Order, In Re: Appeal of Zhaojin David Ke,* File No. 16-116-19198993 (PID Order), Dft. Exh. 8. Ke did not avail himself of his right to appeal that determination.

Trial Court Opinion, filed 4/21/21, at 2-3.

In his appellate brief, Appellant presents the following Statement of the

Questions Involved:

1.Does Judge Robins represent systemic racism that leads to her deliberate bias and retaliation?

2. Has [A]ppellant provided sufficient prima facie evidence, documented by appellees themselves, to prove that they fabricated documents?

3. Has Judge Robins failed to follow the summary judgment standard to obligate this reviewing Court to vacate her summary judgment?

4. Does Judge Robins seriously abuse her discretion by assuming the role of an appellate judge to overrule prior three judges including a federal judge?

5. If [A]ppellant's Complaint have [sic] survived five motions to dismiss, including a motion for judgement on the pleadings, does that demonstrate that he established a prima facie case as far back as four years ago?

6. Because of her palpable bias based on racial animus, should Judge Robins be recused from the instant case?

7. Did Judge Robins abusively deny [A]ppellant's discovery rights to prevent him from developing an adequate record?

8. Did Judge Robins abusively deny [A]ppellant's motion for sanctions that was based on [Allstate's] refusal to implement her own order?

Brief for Appellant at 3-4 (footnotes omitted).

We review the trial court's grant of summary of judgment mindful of our scope and standards of review:

[O]ur scope of review is plenary, and our standard of review is the same as that applied by the trial court. Our Supreme Court has stated the applicable standard of review as follows: [A]n appellate court may reverse the entry of a summary judgment only where it finds that the lower court erred in concluding that the matter presented no genuine issue as to any material fact and that it is clear that the moving party was entitled to a judgment as a matter of law. In making this assessment, we view the record in the light

most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. As our inquiry involves solely questions of law, our review is *de novo.*

***Reinoso v. Heritage Warminster SPE, LLC****,* 108 A.3d 80, 84 (Pa.Super. 2015) (*en banc*) (additional citations omitted) (brackets in original). With respect to the denial of summary judgment, "[w]e review the trial court's denial of summary judgment for an abuse of discretion or error of law." ***Ramsay v. Pierre****,* 822 A.2d 85, 90 (Pa.Super. 2003); ***see also Bezjak v. Diamond****,* 135 A.3d 623, 627 (Pa.Super. 2016).

The bulk of the issues Appellant presents on appeal essentially allege that due to its discrimination against him on the basis of his race, the trial court abused its discretion in granting Allstate's motion for summary judgment. Throughout his fifty-three-page brief, Appellant points to instances he asserts illustrate his claims that an unbiased trial court would not have rendered decisions the way in which the court did herein. For instance, he references certain interrogatories of his which the trial court denied, while it granted Allstate's, Brief for Appellant at 18-20; the disproportionate amount of time he and Allstate were given to present oral argument, *id*. at 20-22; and the discriminatory treatment that led to the disparate rulings on the party's summary Judgment motions, *id*. at 22-25.

Appellant further alleges Allstate "secretly" fabricated documents pertaining to his 2014 and 2015 claims, and another in 2016 to "negate all the previously fabricated documents" yet the trial court was motivated to turn

a blind eye to such evidence and to arbitrarily and capriciously state that "[A]ppellant had 'adduced' no evidence regarding the fabrication." *Id*. at 27-28. Appellant reasons that even without tangible evidence, which he posits he presented, his well-pled facts must be taken as true. *Id*. at 28. Furthermore, Appellant maintains the trial court refused to follow the appropriate standard in granting Allstate's summary judgment motion when it ignored the "thousands of pages of the motions," and, instead, acted as a defense attorney and factfinder. *Id*. at 28-33.

Appellant also posits that the trial court usurped the role of three other jurists, one of whom sits in federal court, who had ruled on previous preliminary objections and motions for judgment on the pleadings in reaching their decisions. Appellant reasons that Allstate's summary judgment motion was decided in its favor, although "no new relevant evidence was added to tip the scale in their favor" due to the trial court's racial animus toward him. Appellant states this is a blatant violation of the law of the case doctrine and reasons that because his Second and Third Amended Complaints have survived five previous motions to dismiss, he has legally established a prima facie case. *Id*. at 34-44.

Finally, Appellant lists and briefly argues what he refers to as "Other Ancillary Issues on Appeal" as follows:

1.     Given her palpable bias based on racial animus, Judge Robins should be disqualified from the instant case[.]

2.	Judge Robins abusively denied Appellant's discovery rights to prevent him from developing an adequate record to prosecute his fraud case[.]

3.	Judge Robins seriously abused her discretion by denying Appellant's motion for sanctions under Rule 4019 that was based on Appellees' refusal to implement her own order[.]

Brief for Appellant at 49-53 (bold print and unnecessary capitalization omitted).

In accordance with the nonrenewal provision of Appellant's automobile insurance policy, Allstate did not renew the policy in 2016 because of the number of claims Appellant had filed.  Allstate notified Appellant of this decision by mailing the notice of nonrenewal to the address on the policy. After unsuccessful attempts to persuade Allstate to reverse its decision, Appellant filed an untimely complaint with the Pennsylvania Insurance Department pursuant to what is commonly known as Act 68 which governs the resolution of auto insurance disputes.[1]  It was determined that Appellant had failed to establish any facts to justify a reversal of the nonrenewal

---

[1] Act 68 is contained within Article XX of The Insurance Company Law of 1921, Act of May 17, 1921, P.L. 682, *as amended*, added by the Act of June 17, 1998, P.L. 464, 40 P.S. §§ 991.2001-.2013.  Act 68 establishes a regulatory scheme in Pennsylvania that prohibits insurance companies from cancelling, refusing to write, and refusing to renew automobile insurance policies for certain discriminatory reasons. **See** Section 2003 of Act 68, 40 P.S. § 991.2003.

decision, and Appellant did not appeal that decision to the Commonwealth Court as Act 68 permits.

Instead, Appellant commenced the instant action in the Philadelphia Court of Common Pleas on March 8, 2017. On April 13, 2017, Allstate filed preliminary objections, and Appellant filed his First Amended Complaint on May 3, 2017. Allstate removed the Amended Complaint to the Eastern District of Pennsylvania, and Appellant's Motion to Remand filed on June 12, 2017, was denied on December 12, 2017.

In his Second Amended Complaint filed on December 19, 2017, Appellant added as defendants Allstate adjusters Steven Schimpf and John Welch in their individual capacities. Several motions to dismiss followed and resulted in the matter being remanded. The Honorable Mitchell S. Goldberg of the United States District Court for the Eastern District of Pennsylvania found Appellant had pled claims against insurance adjusters Schimpf and Welch that had been determined to be "at least colorable under Pennsylvania law" in other matters. *See* Order 8/24/18, at 4. However, the court "decline[d] to delve further into the merits of a state-law claim between nondiverse parties." Finding there was no longer complete diversity among the parties, the court remanded the matter to the Court of Common Pleas of Philadelphia County. *Id*. at 4-5.

On October 18, 2018, Allstate filed its Preliminary Objections to Appellant's Second Amended Complaint, and Appellant filed his Third

Amended Complaint thereafter on January 3, 2019, wherein he asserted nine counts as follows: Count I- Breach of contract; Count II- Fraudulent nondisclosure and misrepresentation; Count III- Statutory bad faith; Counts IV -VI- Violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law (UTPCPL); Count VII- Negligence Count; VIII-Gross negligence; and Count IX- Recklessness. Allstate and Messers. Welch and Schimpf filed Preliminary Objections on January 23, 2019, and the trial court sustained them with regard to the Gross Negligence and Recklessness counts and overruled them in as to all other counts on March 6, 2019, and March 11, 2019, respectively. Allstate filed their Answer and New Matter to the Third Amended Compliant on April 1, 2019.

Messers. Welch and Schimpf filed a Motion for Judgment on the Pleadings on October 2, 2019, and the trial court denied the Motion in a one-line Order on October 31, 2019. Several months of discovery ensued during which time Appellant filed three motions to compel. Allstate complied with the trial court's orders regarding the same, although Appellant continued to request additional, and sometimes nonexistent, documents and information from Allstate. Allstate also filed a motion to compel on November 8, 2019, wherein it requested responses to interrogatories and certain documents; the trial court granted this motion.

On December 8, 2019, Appellant filed his "Motion to Disqualify" wherein he initially raised the allegations he presents on appeal that the trial court

subjected him to discriminatory treatment based upon his race when it granted Allstate's motion to compel but denied Appellant's first motion to compel in part and his final two in their entirety. The trial court denied this motion, and cross-motions for summary judgment followed.

In its appellate brief, Allstate argues, *inter alia*, that Appellant's failure to provide a sworn verification for his Third Amendment Complaint as is required by Pa.R.Civ.P. 1024, an omission which he admitted and refused to cure during his deposition, renders his pleading "mere narration [that] amounts to nothing." **See** Brief for Appellees at 56-57 (citing **Atl. Credit & Fin., Inc. v. Giuliana**, 829 A.2d 340, 344 (Pa.Super. 2003). Our review of the record reveals that Appellant signed his Third Amended Complaint as a *pro se* individual, but the Complaint does not contain the necessary, signed verification statement as is required by the Pennsylvania Rules of Civil Procedure.

When considering an individual's *pro se* representation in an unpublished memorandum decision in **Bisher v. Lehigh Valley Health Network, Inc.,** 237 A.3d 1091 (Pa.Super. 2020) (unpublished memorandum), *appeal granted*, 251 A.3d 779 (Pa. 2021), this Court recently stated:

> Pennsylvania Rule of Civil Procedure 1024(a) states, in pertinent part, as follows:
>
> ### Rule 1024. Verification
> (a) Every pleading containing an averment of fact not appearing of record in the action or containing a denial of fact shall state that

the averment or denial is true upon the signer's personal knowledge or information and belief and **shall be verified**....

....

(c) **The verification shall be made by one or more of the parties filing the pleading** ....

Pa.R.Civ.P. 1024(a) & (c) (emphasis added). The term " 'verified,' when used in reference to a written statement of fact by the signer, means supported by oath or affirmation or made subject to the penalties of 18 Pa.C.S.[A.] § 4904 relating to unsworn falsification to authorities." Pa.R.Civ.P. 76. Courts are willing to liberally construe materials filed by a *pro se* individual. However, "*pro se* status confers no special benefit upon the [individual]. To the contrary, any person choosing to represent himself [or herself] in a legal proceeding must, to a reasonable extent, assume that his [or her] lack of expertise and legal training will be his [or her] undoing." **Norman**, 208 A.3d at 1118-1119 (citation omitted).

A complaint is a legal nullity, void *ab initio*, when the complaint is not signed by the *pro se* plaintiff and fails to include the essential verification statement signed by the plaintiff. **See Atl. Credit and Finance, Inc. v. Giuliana**, 829 A.2d 340, 344 (Pa. Super. 2003) (citation omitted) (holding, the verification requirement is essential to the pleading "because without it a pleading is mere narration, and amounts to nothing"); **see also Monroe Contract Corp. v. Harrison Square, Inc.**, 405 A.2d 954, 958 (Pa. Super. 1979) (holding, non-compliance with verification requirement will not be condoned); **Rupel v. Bluestein**, 421 A.2d 406, 414 (Pa. Super. 1980) (stating, to hold unexplained and unexcused non-compliance with verification requirement as unimportant would only encourage non-compliance by others, and laxity on part of trial courts).

**Bisher v. Lehigh Valley Health Network, Inc.**, 237 A.3d 1091, at *6-7

(Pa.Super. 2020), *appeal granted*, 251 A.3d 779 (Pa. 2021).[2]

---

[2] While **Bisher** is not controlling because it is a non-published memorandum, it nevertheless provides persuasive authority to this Court as it was filed after May 1, 2019. **See** Pa.R.A.P. 126(b) (providing that unpublished non-

*(Footnote Continued Next Page)*

The **Bisher** court quashed the appeal, finding the trial court had been without jurisdiction over the matter as it pertained to Brenton Bisher and Carla Bisher acting as *pro se* individuals, where the complaint had not been accompanied by the "necessary and essential verification statement signed by both of the *pro se* individuals." **Id** at. *7.

Applying the same analysis herein, we find Appellant's *pro se* Third Amended Complaint, which he acknowledges lacks the necessary verification statement, was nothing more than a narration of events and a legal nullity, void *ab initio*. **Id**. Appellant has not attempted to verify his pleading, though given an opportunity to do so at his deposition. While he admits in his brief that he "forgot to attach a verification," he contends the absence of a verification is "harmless error." Brief for Appellant at 30 n. 18. As such, the trial court lacked jurisdiction over the claims raised therein, and this Court is constrained to quash the appeal. **Bisher**, **supra**.

Alternatively, even if Appellant's Third Amended Complaint had contained a properly verified statement, thus giving the trial court jurisdiction over the claims set forth therein, the record demonstrates that the trial court did not abuse its discretion or commit an error of law in granting summary judgment. Following our review of the record, which includes over one

_____

precedential memorandum decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value).

thousand pages of documents produced by Appellees during discovery, we would find no merit to Appellant's assertions.

Initially, we would hold Appellant's fourth and fifth issues lack merit. Appellant maintains the trial court usurped its role in granting Allstate's motion for summary judgment because in doing so it overruled other jurists who had allowed the matter to proceed. Critically, each of the previous jurists who had made rulings in this case did so at earlier stages of the proceedings, and none engaged in fact finding or reached the merits of the claims Appellant presented in his complaint.

Indeed, despite Appellant's repeated assertions that previous courts had "undoubtedly" determined he had established a "prima facie case," **see** Brief for Appellant at 8, those courts did not possess the record evidence obtained during discovery that the trial court herein examined when they disposed of previous motions.

In **K.H. ex rel. H.S. v. Kumar**, 122 A.3d 1080 (Pa.Super. 2015) this Court stated the law is clear that the law of the case doctrine and the coordinate jurisdiction rule do not bar a judge from granting summary judgment on a legal issue as to which preliminary objections were previously denied. In doing so we reasoned:

> [The coordinate jurisdiction rule] is not intended to preclude granting summary judgment following denial of preliminary objections. "The failure to present a cause of action upon which relief can be granted may be raised at any time. A motion for summary judgment is based not only upon the averments of the pleadings but may also consider discovery depositions, answers

- 12 -

to interrogatories, admissions and affidavits." ***Austin J. Richards, Inc. v. McClafferty***, 371 Pa.Super. 269, 538 A.2d 11, 14–15 n. 1 (1988). We can discern no reason for prohibiting the consideration and granting of a summary judgment if the record as it then stands warrants such action. ***Cf. DiAndrea v. Reliance S. & L. Ass'n***, 310 Pa.Super. 537, 456 A.2d 1066, 1069 (1983). This is particularly true when the preliminary objections were denied without an opinion. ***Farber v. Engle***, 106 Pa.Cmwlth. 173, 525 A.2d 864 (1987).

***Id.***, at 1091 (citing ***Salerno v. Philadelphia Newspapers, Inc.***, 546 A.2d 1168, 1170 (Pa.Super. 1988)). ***See also Silvagni v. Shorr***, 113 A.3d 810, 816 (Pa.Super. 2015) (finding denial of attorney and firm's preliminary objections did not bar granting of summary judgment in their favor).

Moreover, to the extent Appellant posits the decisions of a federal trial court enjoy greater authority than that of a Pennsylvania state trial court, or are binding on this Court, he is mistaken. ***See Commonwealth v. Dunnavant***, 63 A.3d 1252, 1255 n. 2 (Pa.Super. 2013) (stating "[i]n the absence of a ruling on a particular question by the United States Supreme Court, the decision of a federal intermediate appellate panel, much less that of a federal district court, is not binding on Pennsylvania courts. Pennsylvania courts are not bound by the decisions of inferior federal courts where the case specifically concerns Pennsylvania law. While decisions of the lower federal courts have a persuasive authority, they are not binding on Pennsylvania courts even where they concern federal questions.")(citations omitted)).

In his first, sixth, seventh, and eighth issues, Appellant sets forth various allegations of the trial court's racial animus toward him that he deems

led to its decision to rule in Appellees' favor more frequently than it did his on pretrial motions and ultimately grant Appellees' summary judgment motion and deny Appellant's. However, Appellant presents nothing aside from his own self-serving statements in support of these allegations.

Indeed, our review of the record reveals the Honorable Shelley Robins New treated Appellant and counsel for Allstate with the same judicial decorum and clearly stated on the record that Appellant "is to be credited with vigorous advocacy on his own behalf." Trial Court Opinion, filed 4/20/21, at 10. Appellant received responses to each interrogatory and the various documents he requested during discovery, yet he blames racial motivation as the reason for the trial court's inability to order Allstate to produce additional documents which simply do not exist.

Appellant's issues two and three pertain to what he deems to be his "entire case" which is "built on [A]ppellees' fabrication of documents." Appellant posits that "once the fabrication is established, all of his claims become valid." Brief for Appellant at 46. Appellant insists "[h]is case is a fraud case," although he asserts the trial court viewed it as a contract matter.[3] *Id*. at 12.

---

[3] In fact, Appellant brought breach of contract claims in his Third Amended Complaint. Notwithstanding, he effectively has waived any challenge to the trial court's granting of summary judgment on his breach of contract arguments as he abandoned and failed to develop them in his brief. As the Pennsylvania Supreme Court has explained:
*(Footnote Continued Next Page)*

To the contrary, the trial court examined every count of Appellant's complaint and found a basis for granting summary judgment for each. ***See*** Trial Court Opinion, filed 4/21/21, at 3-10. For example, the trial court found the breach of contract claim against Messrs. Welch and Schimpf could not stand because there was no record evidence that either stood in privity of contract with Appellant. ***Id***. at 9.

With regard to the fraud allegations, the trial court stated the following:

> By his own admission, [Appellant] contends that "fabricated" documents regarding his 2014 and 2015 claim are the lynchpin of his claims in his counts for breach of contract and statutory bad

_____

> [O]ur rules of appellate procedure are explicit that the argument contained within a brief must contain "such discussion and citation of authorities as are deemed pertinent." Pa.R.A.P. 2119(a).
>
> "[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived. It is not the obligation of [an appellate court ...] to formulate [a]ppellant's arguments for him." ***Commonwealth v. Johnson***, ... 985 A.2d 915, 924 ([Pa.] 2009) (internal citations omitted).

***Wirth v. Commonwealth***, 95 A.3d 822, 837 (Pa. 2014).

Moreover, Appellant specifically abandoned any claim that Allstate treated his 2013 claim fraudulently:

> Here [Appellant] is skipping the 2013 claim that has nothing to do with him as his divorce was pending and that is irrelevant to his fraud case. Based on discovery, his ex-wife leased her vehicle and bought her own insurance. Because he knew nothing about that claim and was in no position to argue about it, he only wants to discuss the documents [Allstate] "secretly" fabricated for the 2014 and 2015 claims.

Brief for Appellant at 25.

faith. This lynchpin is the reason [Appellant] fails in meeting his *prima facie* burden on either the contract or fraud claims because the argument that [Allstate] "fabricated documents" is unsupported by any evidence. [Appellant] relies solely on his own self-serving assumption that an inference of fabrication can be drawn from the documents he attaches to his motion. He references absolutely no corroborative evidence in the form of deposition testimony, documentary exhibits, or affidavits to support his claim that the documents on which he relies show that the defendants engaged in forgery, deception, or unreasonableness. He cites no independent evidence that the [Appellants'] decision were [sic] animated by any improper motive. The most that can be deduced from the evidence is that [Appellant] submitted claims for comprehensive coverage but that, after their investigations, the adjusters disagreed. This was [Allstate's] prerogative. *See* policy language reserving [Allstate's] right to nonrenew the Policy[.]

_____
[8] Specifically, [Appellant] claims that the nonrenewal decision was: "purely predicated on fraud by (1) falsely and intentionally putting his ex-wife's collision clam[sic] on his driving record, conceded (Exhibit 56), by (2) fraudulently changing his 2014 comprehensive claim into "hit and run" or "left-T bone" or "insured hit a fixed object." (Exhibits 1-9, 12-14) to turn it into a collision claim, and by (3) changing his 2015 comprehensive claim into 'INSD struck parked [vehicle] claimant' of 'Insured hit fixed object,' (Exhibits 16-21), another collision claim despite the fact that [Allstate] [does] not have a shred of evidence to support that." *[Appellant's] Memorandum of Law In Support of His Motion for Summary Judgment ([Appellant's] Memo)*, at 13-14.

Trial Court Opinion, filed 4/21/21, at 5-6.

The elements of common law fraud include:

(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.

- 16 -

> ***Gibbs v. Ernst***, 538 Pa. 193, 647 A.2d 882, 889 (1994) (footnote
> omitted). In other words, "a plaintiff must show that he justifiably
> relied on the defendant's wrongful conduct or representation and
> that he suffered harm as a result of that reliance." ***Yocca v.***
> ***Pittsburgh Steelers Sports, Inc.***, 578 Pa. 479, 854 A.2d 425,
> 438 (2004) (citations omitted).

***Richards v. Ameriprise Fin., Inc.***, 152 A.3d 1027, 1035 (Pa.Super. 2016).

The documents to which Appellant refers reveal that although his 2014 claim with Allstate initially had been reported as a "comprehensive" claim, it was later characterized as a "collision" claim. While these designations are different, without more, the change in the characterization of the claim falls far short of establishing a *prima facie* case of fraud. **See Richards, supra**.

The same is true of the documents relating to Appellant's 2015 claim. In his Appellate brief, Appellant discusses a document from Allstate's claim history report regarding that claim as follows:

> Schimpf fabricated the document calling it "insured hit a parked vehicle.: (R. 294a.) He never investigated and never produced any evidence of the vehicle [Appellant] allegedly had hit. However, in a document dated September 12, 2016 Allstate confesses that [Allstate] deliberately fabricated "Insured hit a parked vehicle." The clerk confessor wrote:
> [The insured] is changing loss facts from hit [fixed] object but we set up as hit parked car. Will leave it like that for now. (R. 290a).

Brief for Appellant at 26-27.

However, when read in its entirety, the notations in the report reveal it was inconsistencies in Appellant's explanation for the 2015 claim that led to the modifications therein:

Earr Concern.

- 17 -

Concern insured disputing loss facts
it was reported hit a fence in the fnol…
then he was disputing it stating he a car hit him the [sic] he said his car was vandalized.
So, he is changing loss facts from hit fixed object but we set up as hit parked car.  Will leave like that for now.  I called insured and l/m on v/m to call back but at this time he is listed at fault for claim."

Claim History Report, entry dated 9/12/16.

Rather than support Appellant's allegations of fraud due to Allstate's fabrication of documents, the Claim History Report chronicles the different reasons Appellant provided for making the 2015 claim and the decisions made with regard to how that claim should best be characterized as a result.  In fact, an earlier entry dated September 7, 2016, indicates that Appellant was "very irate about his claim being messed up," prompting the person with whom he spoke to "put a task in to reassign the claim so we can get him better taken care of."

Appellant urges that his pleadings alone are sufficient to defeat Allstate's motion for summary judgment.  He erroneously contends that:

it is well established that even without any tangible evidence, in summary judgment, all well alleged facts by the nonmoving party are taken as true. . . .  Therefore, if [A]ppellant's well alleged facts in the complaint create an issue of material fact, then summary judgment should not be granted to [Allstate].  In the instant case, because [A]ppellant's Third Amended Complaint is accompanied by prima facie evidence, documents created by [Allstate] themselves, his alleged facts should only further strengthen his claims under Kerns v. Methodist Hosp."

Brief for Appellant at 28

Appellant references and quotes ***Kerns v. Methodist Hosp***., 574 A.2d 1068, 1069 (Pa.Super. 1990) wherein this Court stated, in part:

> motion for summary judgment may properly be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law.

Brief for Appellant at 28. Significantly, Appellant omits the remainder of this Court's analysis from his discussion:

> In passing on a motion for summary judgment, the court must examine the record in the light most favorable to the non-moving party. **[However], it is clear that to survive a motion for summary judgment, the non-moving party may not rely merely upon the allegations of the contested pleadings, but must set forth specific facts by way of affidavit, or in some other way as provided by the rule, demonstrating that a genuine issue exists**.

***Id***. (citation omitted) (emphasis added).

Thus, even if Appellant's mere allegations were somehow sufficient to overcome Allstate's motion for summary judgment, which they are not, as we discussed ***supra***, Appellant has failed to provide a sworn verification for his Third Amended Complaint. Under ***Bisher***, ***supra***, this omission results in quashal of his appeal.

Appeal quashed.

Judge Kunselman joins the memorandum.

Judge Nichols concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/5/2021